**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
(Charlottesville Division)**

| | |
|---|---|
| IRONWORKS DEVELOPMENT LLC, | |
| Plaintiff, | |
| v. | Case No. 3:21-cv-00032 |
| TRUIST BANK, | |
| Defendant. | |

**TRUIST BANK'S RESPONSE TO IRONWORKS DEVELOPMENT LLC'S
OBJECTIONS TO MAGISTRATE JUDGE HOPPE'S REPORT AND
RECOMMENDATION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .............................................................................................................. 1

LEGAL STANDARDS ...................................................................................................... 2

ARGUMENT ...................................................................................................................... 4

**I.    Magistrate Judge Hoppe properly concluded that amendment of the contract claim would be futile. ........................................................................................................ 4**

    A.    Magistrate Judge Hoppe properly concluded Plaintiff failed to plausibly allege consideration. ................................................................................................................... 6

        1.    The purported consideration Plaintiff identifies is illusory. ............................... 6

        2.    Plaintiff fails to plausibly allege that Truist received any benefit. .................... 8

        3.    Plaintiff fails to plausibly allege that either party incurred a detriment. .......... 11

    B.    Amendment to add the contract claim also would be futile for multiple other reasons. 13

        1.    Plaintiff disclaimed the existence of this contract to the Court. ....................... 13

        2.    Plaintiff fails to allege a breach of the asserted contract. ................................ 14

        3.    Plaintiff fails to allege it was harmed by any breach. ..................................... 15

**II.   Magistrate Judge Hoppe properly concluded that Plaintiff has no separate claim for a breach of the covenant of good faith and fair dealing. ............................................. 16**

**III.  Magistrate Judge Hoppe properly concluded that Plaintiff's proposed fraud claim is futile. ............................................................................................................................ 16**

    A.    Magistrate Judge Hoppe properly concluded that Plaintiff fails to allege that any damages resulted from the alleged misrepresentations. ................................................. 17

    B.    The fraud claim is also futile because Plaintiff fails to allege the representations at issue were false or made with knowledge of falsity. ......................................................... 21

        1.    Only three statements approach the particularity Rule 9(b) requires. ............... 21

        2.    Plaintiff fails to plausibly allege these statements were false. ......................... 21

        3.    Plaintiff fails to plausibly allege that the Truist representatives knew their statements were false. ............................................................................................................... 23

**IV.   If Plaintiff's Amended Complaint proceeds in any form, its damages claims should be trimmed. ...................................................................................................................... 24**

    A.    Plaintiff has not alleged entitlement to damages under Va. Code § 18.2-500. .............. 24

    B.    Plaintiff has failed to plausibly allege entitlement to punitive damages. ..................... 24

**CONCLUSION ................................................................................................................... 25**

i

# TABLE OF AUTHORITIES

**Cases**

*Am. Agric. Co. v. Kennedy*, 48 S.E. 868 (Va. 1904) ......................................................... 6

*Aziz v. Alcolac, Inc.*, 658 F.3d 388 (4th Cir. 2011) .......................................................... 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................... 3, 4

*Bennett v. 3M Co.*, No. 3:14-cv-198, 2014 WL 1493188 (E.D. Va. Apr. 15, 2014) ................... 25

*Chance v. Wells Fargo Bank, N.A.*, No. 3:12-cv320, 2012 WL 4461495 (E.D. Va. Sept. 25, 2012) .............................................................................................................. 14

*CJM Fin., Inc. v. Leebcor Servs., LLC*, No. 4:20-cv-35, 2021 WL 1256906 (E.D. Va. Apr. 5, 2021) .............................................................................................................. 5

*Cotton Bros. Baking Co. v. Indus. Risk Insurers*, 941 F.2d 380 (5th Cir. 1991) ......................... 13

*Cotton Bros. Baking Co. v. Indus. Risk Insurers*, 951 F.2d 54 (5th Cir. 1992) ........................... 14

*Devil's Advoc., LLC v. Zurich Am. Ins. Co.*, No. 1:13-cv-1246, 2014 WL 5161197 (E.D. Va. Oct. 10, 2014) ....................................................................................................... 14

*Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535 (4th Cir. 2019) ........................................... 4, 17, 20

*Eplus Tech., Inc. v. Nat'l R.R. Passenger Corp.*, 407 F. Supp. 2d 758 (E.D. Va. 2005) ............. 16

*Farley v. Clarke*, No. 7:15-cv-00352, 2017 WL 1049579 (W.D. Va. Mar. 17, 2017) ................... 3

*Filak v. George*, 267 Va. 612 (2004) .......................................................................... 5

*Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474 (4th Cir. 2006) ............................................. 16, 19

*GSHH-Richmond, Inc. v. Imperial Assocs.*, 253 Va. 98 (1997) ......................................... 6

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776 (4th Cir. 1999) ......................... 4

*Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462 (4th Cir. 2011) ...................................... 3, 5, 19

*Laber v. Harvey*, 438 F.3d 404 (4th Cir. 2006) (en banc) ............................................... 3

*Leitner v. Liberty Univ., Inc.*, No. 6:19-cv-00029, 2020 WL 7128972 (W.D. Va. Dec. 4, 2020) ................................................................................................................ 24

*Lissmann v. Hartford Fire Ins. Co.*, 848 F.2d 50 (4th Cir. 1988) ....................................... 23

## Cases (continued)

*M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427 (2015) ........................................................ 6

*Mcinnis v. BAC Home Loan Servicing, LP*, No. 2:11-cv-468, 2012 WL 368282 (E.D. Va. Feb. 3, 2012) ........................................................................................................................................ 11

*Mcinnis v. BAC Home Loan Servicing, LP*, No. 2:11-cv-468, 2012 WL 383590 (E.D. Va. Jan. 13, 2012) ...................................................................................................................................... 11

*McLaughlin v. Gholson*, 210 Va. 498 (1970) ........................................................................... 13

*Montagna v. Holiday Inns, Inc.*, 221 Va. 336 (1980) ................................................................. 5

*Orpiano v. Johnson*, 687 F.2d 44 (4th Cir. 1982) ...................................................................... 3

*Quingling Sun v. Braddock Place Townhouses Ass'n*, No. 1:19-cv-00423, 2020 WL 4572916 (E.D. Va. Aug. 7, 2020) ................................................................................................ 6, 11, 12

*RLM Commc'ns, Inc. v. Tuschen*, 66 F. Supp. 3d 681 (E.D.N.C. 2014) ...................................... 7

*Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754 (4th Cir. 2011) ............................... 4

*Sit–Set, A.G. v. Universal Jet Exch., Inc.*, 747 F.2d 921 (4th Cir. 1984) .................................... 24

*Smith v. Colonial Ins. Co. of California*, 258 Va. 30 (1999) ...................................................... 12

*Smith v. Mountjoy*, 280 Va. 46 (2010) ....................................................................................... 6

*Stanford Tukwila Hotel Corp. v. GBC Int'l Bank*, No. 2:21-cv-01486, 2022 WL 279321 (W.D. Wash. Jan. 31, 2022) ................................................................................................ 10, 18, 19

*United States ex rel. Oldham v. Centra Health, Inc.*, 548 F.Supp.3d 568 (W.D. Va. July 12, 2021) .................................................................................................................................. 3, 18

*Veney v. Astrue*, 539 F. Supp. 2d 841 (W.D. Va. 2008) ............................................................. 3

*Wexford Bancorp, LLC v. Concept 1 LLC*, No. 04-1827, 2004 WL 3625395 (Va. Cir. Ct. Oct. 14, 2004) ....................................................................................................................................... 6, 7

*Xia Bi v. McAuliffe*, 927 F.3d 177 (4th Cir. 2019) ...................................................................... 4

## Statutes

28 U.S.C. § 636 ........................................................................................................................... 2

**Statutes (continued)**

Virginia Code § 18.2-499 ................................................................................................ 24

Virginia Code § 18.2-500 ................................................................................................ 24

**Other Authorities**

*SBA Form 2483-SD, Paycheck Protection Program Second Draw Borrower Application Form*,
    Small Business Administration, *available at* https://www.sba.gov/document/sba-form-2483-
    sd-ppp-second-draw-borrower-application-form ...................................................... 13

*SBA Procedural Notice No. 5000-20092*, Small Business Administration (Feb. 10, 2021),
    *available at* https://www.sba.gov/sites/default/files/2021-02/Procedural%20Notice%205000-
    20092%20-%20Revised%20PPP%20Procedures%20to% 20Address%20Hold%20Codes-
    508.pdf ............................................................................................................ 15, 18, 22

**Rules**

Federal Rule of Civil Procedure 12(b) ............................................................................. 4

Federal Rule of Civil Procedure 15(a) ............................................................................. 3

Federal Rule of Civil Procedure 72(b) .......................................................................... 2, 3

Federal Rule of Civil Procedure 8 ................................................................................. 20

Federal Rule of Civil Procedure 9(b) ..................................................................... 4, 20, 21

**Treatises**

3 Williston on Contracts (4th ed.) .................................................................................... 6

**Regulations**

*Business Loan Program Temporary Changes; Paycheck Protection Program Second Draw
    Loans*, Small Business Administration, 86 Fed. Reg. 3712 (Jan. 14, 2021) .................. 9, 10, 18

## INTRODUCTION

This Court dismissed Plaintiff Ironworks Development LLC's original complaint, with prejudice as to two claims and with leave to amend as to another.  D.E. 28 ("Order") at 8. Plaintiff moved to amend its complaint, and this Court referred that motion to Magistrate Judge Hoppe.  D.E. 42.  Magistrate Judge Hoppe recommended denying Plaintiff's motion to amend, D.E. 49 ("R&R"), and Plaintiff filed objections to Magistrate Judge Hoppe's Report and Recommendation.  D.E. 50 ("Objections").  Defendant Truist Bank ("Truist") respectfully submits that this Court should adopt the Report & Recommendation in full and dismiss this action because amendment of the complaint would be futile.

Plaintiff's proposed amended complaint repeats many of the same allegations concerning Plaintiff's application for a Paycheck Protection Program Second Draw ("PPP 2.0") loan that were found in its original complaint.  Plaintiff alleges that Truist submitted Plaintiff's application to the Small Business Administration ("SBA"), D.E. 42-1 ("Amended Complaint"), ¶ 9, and that Truist resolved one "hold code" that the SBA placed on Plaintiff's application, *id.*, ¶ 35.  Plaintiff then alleges that the SBA placed a second hold on Plaintiff's application, that Truist never resolved this second hold code, and that the failure to resolve this hold code led the SBA to deny Plaintiff's application, *id.*, ¶¶ 10, 16, 17, 35.  As before, Plaintiff also alleges that Truist told Plaintiff that its application was with the SBA and that Truist was waiting on the SBA to act, while—Plaintiff alleges—Truist should have been resolving the hold code itself, *see id.*, ¶¶ 13–15.

Plaintiff's Amended Complaint does add a few new variations to this familiar narrative. In particular, Plaintiff now alleges that it had a contract with Truist, notwithstanding its prior, contradictory representations to the Court.  *See* Order at 7 ("[T]he Court asked several times

1

whether the parties had entered into a contract with respect to the loan application. Ironworks insisted they had not."). But even setting that reversal to the side, Plaintiff's motion to amend its complaint is futile on the merits, as Magistrate Judge Hoppe concluded. Plaintiff's proposed contract claim fails because "Ironworks has not plausibly alleged any consideration in support of its alleged contract." R&R at 8. Plaintiff's ancillary claim alleging a breach of the covenant of good faith and fair dealing fails without an underlying contract. *Id.* at 13. And Plaintiff's fraud claim fails for reasons that parallel this Court's prior analysis of causation, namely that Plaintiff fails to allege "that Truist's alleged fraud caused its damages." *Id.* at 16.

Plaintiff's Objections provide no reason to think that Magistrate Judge Hoppe erred in his Report and Recommendation. The Objections cite no authority at all—other than when they quote Magistrate Judge Hoppe's ruling and, in one instance, respond to a case that he cited. More fundamentally, Plaintiff fails to demonstrate that it had a contract with Truist. Plaintiff's concession at the initial hearing was correct—there was no contract between the parties with respect to the loan application—and the *ex post* attempt to gin up a contract falls flat. Likewise, both the proposed contract and fraud claims are futile because Plaintiff has failed, at the second time of asking, to demonstrate that any of Truist's alleged failings caused it damages.

Truist respectfully submits that the Court should adopt Magistrate Judge Hoppe's Report and Recommendation, deny Plaintiff's motion to amend, and dismiss this case with prejudice.

## LEGAL STANDARDS

This Court referred Plaintiff's motion to amend to Magistrate Judge Hoppe pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), and Plaintiff objected to Magistrate Judge Hoppe's Report and Recommendation under those same provisions. A district court must conduct a *de novo* review of the specific portions of a report and recommendation to

which a party has properly objected.  Fed. R. Civ. P. 72(b)(3).  However, a court need not

perform a *de novo* review of generalized objections or repetitious legal arguments already

considered by the magistrate judge.  *See Veney v. Astrue*, 539 F. Supp. 2d 841, 845–46 (W.D.

Va. 2008) (holding *de novo* review inappropriate because "[t]he issues that Plaintiff raises in her

general objection have already been addressed by Magistrate Judge Crigler when they were

before him in Plaintiff's summary judgment brief"); *see also Farley v. Clarke*, No. 7:15-cv-

00352, 2017 WL 1049579, at \*2 (W.D. Va. Mar. 17, 2017) ("*de novo* review is not required

when objections concern legal issues and not factual issues" (citing *Orpiano v. Johnson*, 687

F.2d 44, 47 (4th Cir. 1982))).

Plaintiff's underlying motion was a Federal Rule of Civil Procedure 15(a)(2) motion to

amend.  Rule 15(a)(2) provides:

> [A] party may amend its pleading only with the opposing party's written consent
> or the court's leave.  The court should freely give leave when justice so requires.

A court may properly deny a motion to amend when the moving party has acted in bad faith or

when the proposed amendment would be futile.  *Laber v. Harvey*, 438 F.3d 404, 426–27 (4th Cir.

2006) (en banc).  A court properly may deny leave on futility grounds when the proposed

amended complaint "fails to state a claim under the applicable rules and accompanying

standards."  *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011).

Generally, to state a claim, "a plaintiff's 'factual allegations must be enough to raise a

right to relief above the speculative level,' thereby 'nudging [its] claims across the line from

conceivable to plausible.'"  *United States ex rel. Oldham v. Centra Health, Inc.*, 548 F.Supp.3d

568, 574 (W.D. Va. July 12, 2021) (cleaned up) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007) and *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011)).  Although the

complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the

'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv.*, *LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotations omitted).

Additionally, Plaintiff must satisfy Federal Rule of Civil Procedure 9(b) with respect to its fraud claim.  "Federal Rule of Civil Procedure 9(b) heightens pleading standards for claims of fraud, so that 'a party must state with particularity the circumstances constituting fraud,' except that 'conditions of a person's mind may be alleged generally.'" *Xia Bi v. McAuliffe*, 927 F.3d 177, 182 (4th Cir. 2019) (quoting Fed. R. Civ. P. 9(b)).  "To satisfy Rule 9(b), a plaintiff must plead 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 553 (4th Cir. 2019) (citation omitted).  "[L]ack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999).

## ARGUMENT

### I.   <u>Magistrate Judge Hoppe properly concluded that amendment of the contract claim would be futile.</u>

Plaintiff's motion to amend its complaint to add a breach of contract claim should be denied as futile because Plaintiff's allegations fail to state a claim.

Plaintiff's breach of contract argument centers on a February 17, 2021 letter, which Truist wrote to Plaintiff and which Plaintiff signed and returned to Truist on February 22, 2021.

D.E. 46-2.[1]  In its letter, Truist informed Plaintiff that after reviewing Plaintiff's documents Truist had been "unable to process [Plaintiff's] application" because it could not "substantiate/validate the amount" of funds that Plaintiff had requested.  *Id.*  Truist asked Plaintiff whether it wanted to proceed with an application for the amount which Truist had been able to verify or, alternatively, whether Plaintiff wanted to submit additional information to verify the number that Plaintiff had originally proposed.  The correspondence from Truist further stated that "[i]f [Plaintiff] choose[s] to accept these amounts as terms applicable to [its] PPP Loan, [Truist] will process [Plaintiff's] PPP Loan in the above amount with the SBA."  *Id.* Truist required a response within three calendar days and reminded Plaintiff that "funding for the Paycheck Protection Program is limited and being processed by the SBA on a 'first-come, first-served' basis."  *Id.*  Plaintiff sent a signed response back on February 22, 2021, *see id.*, *five* calendar days after the date of Truist's letter.[2]  In its tardy response, Plaintiff proceeded with its application for the amount which Truist had calculated as being supported by documentation.  *Id.*

Plaintiff's claim entirely turns on this exchange of correspondence.  "The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation."  *Filak v. George*, 267 Va. 612, 619 (2004).  "A legally enforceable contract requires an offer, acceptance, and valuable consideration."  *CJM Fin., Inc. v. Leebcor Servs., LLC*, No. 4:20-cv-35, 2021 WL 1256906, at *3 (E.D. Va. Apr. 5, 2021) (citing *Montagna v. Holiday Inns, Inc.*, 221 Va. 336, 346 (1980)).  Consideration represents "the price

---

[1]     The Court may take notice of "documents referred to" in the complaint.  *Katyle*, 637 F.3d at 466; *see* R&R at 2 n.2.

[2]     This purported acceptance was after any offer from Truist would have expired and so could not have formed a contract.  The Court could dispose of this claim on this basis alone.

bargained for and paid for a promise.'" *Quingling Sun v. Braddock Place Townhouses Ass'n*, No. 1:19-cv-00423, 2020 WL 4572916, at *5 (E.D. Va. Aug. 7, 2020) (quoting *Smith v. Mountjoy*, 280 Va. 46, 53 (2010). Consideration "may come in 'a benefit to the party promising or a detriment to the party to whom the promise is made.'" *Id.* (quoting *GSHH-Richmond, Inc. v. Imperial Assocs.*, 253 Va. 98, 101 (1997)). Here, Plaintiff has failed to allege (1) that there was consideration to support the alleged contract, (2) that there was a breach of any alleged contract, or (3) that he was harmed by any breach that did occur.

### A. Magistrate Judge Hoppe properly concluded Plaintiff failed to plausibly allege consideration.

As Magistrate Judge Hoppe concluded, "Ironworks has not plausibly alleged any consideration in support of its alleged contract with Truist," R&R at 8, because (1) Plaintiff retained the ability to withdraw its application (and so any promise it made was illusory), (2) Truist did not receive a benefit from the application, and (3) neither party incurred a detriment.

### 1. The purported consideration Plaintiff identifies is illusory.

Ironworks identifies several different forms of purported consideration, but none of them can support a contract because they are illusory. "[U]nder 'traditional principles of contract law,' illusory promises 'cannot serve as consideration for a contract.'" R&R at 10 (quoting *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 440 (2015) in parenthetical); *accord* 3 Williston on Contracts § 7:7 (4th ed.) ("Where an illusory promise is made, that is, a promise merely in form, but in actuality not promising anything, it cannot serve as consideration."). A promise is illusory when compliance with it is "optional" or when the promising party is not "bound" to comply. R&R at 10 (quoting *Wexford Bancorp, LLC v. Concept 1 LLC*, No. 04-1827, 2004 WL 3625395, at *2 (Va. Cir. Ct. Oct. 14, 2004) and *Am. Agric. Co. v. Kennedy*, 48 S.E. 868, 870 (Va. 1904) in parentheticals).

Here, the SBA's framework allowed Plaintiff to request that Truist withdraw its PPP application, which was the alleged source of any benefit to Truist or detriment to Plaintiff.  *See* Amended Complaint ¶ 31; R&R at 11 ("the allegations in the Amended Complaint demonstrate that Ironworks maintained the ability to withdraw this alleged benefit—its application—at any time").  Because "the purported benefit to Truist could have been withdrawn at the will of Ironworks," any consideration was illusory.  R&R at 11; *accord Wexford Bancorp*, 2004 WL 3625395, at *2 (sustaining demurrer on the grounds that there was a "lack of consideration" because of "the illusory or optional nature of the plaintiff's promise"); *RLM Commc'ns, Inc. v. Tuschen*, 66 F. Supp. 3d 681, 692 (E.D.N.C. 2014) (applying North Carolina law) ("[C]onsideration which may be withdrawn on a whim is illusory consideration which is insufficient to support a contract.").  This simple point is dispositive of Plaintiff's contract claim.

Ironworks offers three responses.  *First*, Ironworks asserts—without citation—that "[t]he fact that Ironworks *could* direct Truist to withdraw its loan application and go elsewhere with its business is irrelevant."  Objections at 5 (emphasis in original); *id.* at 6 ("The fact that the customer could walk is of no consequence.").  But the authority cited above directly contradicts Plaintiff's *ipse dixit* and demonstrates—as Magistrate Judge Hoppe put it—this "arrangement lacks the existence of 'bargained for consideration' sufficient to support an enforceable obligation."  R&R at 11.  Plaintiff provides no reason to abandon this black letter law.

*Second*, Plaintiff argues that "while Ironworks could withdraw its PPP loan application *from Truist* at any time, only Truist could withdraw the PPP guaranty application *from the SBA*."  Objections at 6 (emphases in original).  But this distinction that Plaintiff attempts to draw between withdrawing the application from Truist and from the SBA leads nowhere.  "[T]he allegations suggest that Ironworks had the right to unilaterally request the withdrawal of its

7

application thereby also withdrawing any supposed benefit to Truist." R&R at 11 (citing Amended Complaint ¶¶ 27, 31, 38, 41). In other words, the regulatory scheme and the Amended Complaint demonstrate that Ironworks could have instructed Truist to withdraw its application and Truist would have had to comply. Plaintiff draws a distinction without a difference.

*Third*, Plaintiff argues that it was "tricked" into leaving its application with Truist. Objections at 7. But the Amended Complaint nowhere alleges that Truist made any misrepresentations about Plaintiff's *ability* to withdraw its application. Instead, Plaintiff's argument appears to be Truist led Plaintiff to believe "taking its business elsewhere would merely put Plaintiff at the back of the line and worse off than it was before." Amended Complaint ¶ 12. But this is an alleged misrepresentation about *the effect* of withdrawing the application—not an allegation that Truist told Plaintiff that it could not do so. In any event, Plaintiff cites no authority explaining how such an alleged misrepresentation could turn an illusory promise into consideration sufficient to establish an enforceable contract.

Plaintiff's ability to withdraw its application unilaterally made the consideration illusory and the purported contract unenforceable. Plaintiff provides no reason to doubt that conclusion.

## 2.  Plaintiff fails to plausibly allege that Truist received any benefit.

The illusory nature of Plaintiff's purported consideration is dispositive, but Plaintiff relatedly fails to identify any benefit that Truist received from the asserted contract. As Plaintiff alleges that Truist only earned funds from PPP 2.0 loans that were granted, Amended Complaint, ¶ 40, it received nothing for working on or processing unsuccessful loan applications, like Plaintiff's. Plaintiff is thus left to argue (1) that Truist "received the benefit of submitting the application to the SBA more quickly," Objections at 3, and (2) that "Truist also benefited from Ironworks' agreement to forego the additional money because it removed the corresponding

obligation to '[s]ubmit a revised Borrower Worksheet and/or supporting documentation' in support of those funds," *id.*  Neither argument demonstrates that Truist received a benefit.

*First*, Truist did not benefit from submitting the application more quickly because, as noted above, Truist was not paid when the loans were submitted but instead when the loans were "successfully" processed.  Amended Complaint, ¶ 40.  And "merely because an application is submitted earlier does not automatically make it more likely to be approved."  R&R at 11.  To be successful, "the borrower must satisfy the eligibility requirements" and the SBA's review of the application turned on "several factors."  *Id.* at 11–12.  But Plaintiff failed to address—other than in conclusory fashion, *see, e.g.*, Amended Complaint, ¶ 23 ("Plaintiff met the SBA requirements")—whether it satisfied these other requirements.

While Plaintiff does not address those requirements, it does argue that it would have received the loans but for Truist's alleged mistake because (1) Plaintiff received a First Draw PPP ("PPP 1.0") loan and (2) because the letter Plaintiff received from the SBA stated that there had been a "PPP lender error."  Objections at 7–8.  But neither point proves as much as Plaintiff hopes.  That Plaintiff had received a PPP 1.0 loan was not dispositive of whether it would receive a PPP 2.0 loan.  As Plaintiff acknowledges, the SBA's regulations stated that "the eligibility requirements for Second Draw PPP Loans" were "narrower than the eligibility requirements for First Draw PPP Loans."  Objections at 8 n.5 (quoting *Business Loan Program Temporary Changes; Paycheck Protection Program Second Draw Loans*, Small Business Administration, 86 Fed. Reg. 3712, 3713 (Jan. 14, 2021)).  Moreover, funding for PPP 2.0 loans was also dependent on the applicant applying properly, *see, e.g.*, Amended Complaint ¶ 35 (discussing the first hold code that the SBA issued after Plaintiff erred in submitting its application), how the PPP 1.0 loan funds had been used, *see, e.g.*, R&R at 12 (citing 86 Fed.

Reg. at 3713), and other factors.  Success on a PPP 1.0 loan application did not guarantee success on a PPP 2.0 loan application.  *See Stanford Tukwila Hotel Corp. v. GBC Int'l Bank*, No. 2:21-cv-01486, 2022 WL 279321, at *3 (W.D. Wash. Jan. 31, 2022) ("While Plaintiff may have assumed that it was *entitled* to a second round of PPP funding . . . , there are no facts upon which to base the bare assumption that it was entitled to receive a second unsecured and forgivable loan." (footnote omitted, emphasis in original)).

Likewise, the SBA letter does not demonstrate that Plaintiff was entitled to a PPP loan. As Plaintiff acknowledges, "the SBA letter does not explicitly say Ironworks met all the other requirements."  Objections at 8.  Indeed, the SBA letter does not speak to whether Plaintiff satisfied the SBA's various other requirements at all—it at most blames Truist for not resolving the second hold code.  And so, because Ironworks has not plausibly alleged that it satisfied the SBA's other requirements, "the fact . . . that its application could be processed more quickly would not make it any more likely that the application would be approved."  R&R at 12.

*Second*, Plaintiff's alleged agreement "to forego the additional money" also did not benefit Truist.  Objections at 3.  As above, there were multiple other requirements that Plaintiff has not demonstrated it satisfied, and so "the fact that [Plaintiff] agreed to the lower amount . . . would not make it any more likely that the application would be approved" and that Truist would thus benefit.  R&R at 12.  Equally fundamentally, Plaintiff's allegations and the correspondence between Truist and Plaintiff make clear that Truist was unable to process the loan application at the higher amount *because of the SBA's regulations*.  Truist's adherence to those regulations by only processing the application at the lower value did not result in Truist "receiving a benefit"— it was simply "fulfilling a requirement to which [it was] already legally bound." *Quingling Sun*,

10

2020 WL 4572916, at *5.  Declining to violate the regulations by submitting an unsubstantiated loan application did not result in Truist receiving consideration.

### 3.  Plaintiff fails to plausibly allege that either party incurred a detriment.

Like the purported benefit to Truist, the detriments that Plaintiff asserts that both it and Truist suffered are illusory because they all flow from the loan application, which Plaintiff could withdraw, as discussed above.  But this theory of consideration also fails because Plaintiff relatedly fails to allege any detriment that either party incurred.

Plaintiff argues that Truist incurred a detriment because it stated that it would "process [Plaintiff's] PPP Loan . . . with the SBA."  D.E. 46-2; *see* Objections at 4.  But, as Plaintiff correctly acknowledges, lenders do not enter into contracts simply by accepting loan applications.  *See* Objections at 4 ("a simple loan application does not create a contractual obligation for the lender").  Plaintiff's argument thus is not that Truist made "a promise that the SBA would approve" the application, but instead that Truist promised that it "would complete the process with the SBA."  *Id.*  This overreads the correspondence, which simply communicated to Plaintiff that it needed to modify its application for Truist to "process" it in line with the SBA's regulations.  *See* D.E. 46-2.  This communication functioned no differently than the resubmission of a modified application and as such created no contractual obligation.  *See Mcinnis v. BAC Home Loan Servicing, LP*, No. 2:11-cv-468, 2012 WL 383590, at *7 (E.D. Va. Jan. 13, 2012) ("When a loan modification is contemplated, the borrower offers the application to the lender, which the lender can either accept or reject after a determination of the borrower's eligibility."), *report and recommendation adopted*, No. 2:11-cv-468, 2012 WL 368282 (E.D. Va. Feb. 3, 2012).

Accepting Plaintiff's argument would fundamentally reshape the banking industry. Applications function as offers. *See, e.g.*, *Smith v. Colonial Ins. Co. of California*, 258 Va. 30, 33 (1999) ("[A]n application for insurance is merely an offer to enter into a contract."). It cannot be the case that a lender processing an application forms a contract or takes on further obligations by simply confirming or modifying one portion of an application and telling the applicant that they will continue processing the application, as Plaintiff alleges here. Such a rule would freeze any meaningful communication between applicants and lenders concerning pending applications, for fear that they would be deemed to have formed a contract after the fact.

Plaintiff additionally argues that there was consideration sufficient to establish an enforceable agreement because it incurred a detriment. Its argument, which was not presented to Magistrate Judge Hoppe and is now made only in a footnote, *see* Objections at 5 n.3, appears to be that it suffered a detriment because (1) it agreed to the lower loan amount and (2) it could not apply for PPP 2.0 loans with any other lenders after it had submitted its loan application through Truist. But Plaintiff has not demonstrated that it was entitled to any loan amount, let alone the higher loan amount, and so the decision to forego an application for a higher amount based upon unsubstantiated numbers was not a detriment. *See Quingling Sun*, No. 1:19-cv-00423, 2020 WL 4572916, at *5 (holding no consideration when the other party "was fulfilling a requirement to which they were already legally bound").

Likewise, the SBA's requirement that loan applicants only apply through a single lender did not impose a detriment on Plaintiff. As explained above, Plaintiff retained the unilateral ability to withdraw its application and apply again with a different lender. Moreover, Plaintiff had previously applied with Truist, certifying that it "has not and will not receive another Second Draw Paycheck Protection Program Loan." *SBA Form 2483-SD, Paycheck Protection Program*

*Second Draw Borrower Application Form*, Small Business Administration, *available at*

https://www.sba.gov/document/sba-form-2483-sd-ppp-second-draw-borrower-application-form.

The correspondence between Plaintiff and Truist did nothing to modify the commitment Plaintiff

had already made in its loan application.

Magistrate Judge Hoppe correctly concluded that Plaintiff has failed to plausibly allege

the existence of consideration to support an enforceable contract.

**B.    Amendment to add the contract claim also would be futile for multiple other reasons.**

This Court need go no further to deny Plaintiff's motion to add its contract claim—the

failure to allege consideration is fatal, as Magistrate Judge Hoppe concluded.  But there are also

several other, alternative reasons to deny the motion.

**1.    Plaintiff disclaimed the existence of this contract to the Court.**

As noted above, Plaintiff disclaimed the existence of any contract to the Court during the

hearing on Truist's initial motion to dismiss.  "[T]he Court asked several times whether the

parties had entered into a contract with respect to the loan application.  Ironworks insisted they

had not."  Order at 7.  The Transcript is clear on this point.  D.E. 46-1 at 20.  But instead of

acknowledging its change in position, Plaintiff has suggested that the Court suffers from "some

confusion about Ironworks' position at the hearing."  D.E. 41-1 ("Mot.") at 3.

It is black letter law in Virginia, as elsewhere, that "[a] litigant cannot assume positions

which are inconsistent with each other and mutually contradictory."  *McLaughlin v. Gholson*,

210 Va. 498, 501 (1970).  This Court could thus deny Plaintiff's attempt to now add the

disclaimed contract claim based on Plaintiff's opportunistic change in position.  *See Cotton Bros.*

*Baking Co. v. Indus. Risk Insurers*, 941 F.2d 380, 388 (5th Cir. 1991) (affirming the denial of a

motion to amend when party attempted to "disclaim[] the existence of a contract it had spent

three and one-half years urging in litigation"), *as amended on denial of reh'g*, 951 F.2d 54 (5th Cir. 1992).

### 2.    Plaintiff fails to allege a breach of the asserted contract.

To the extent the correspondence providing that Truist would "process" Plaintiff's loan obligation is deemed to create a binding obligation for Truist, Plaintiff has failed to plausibly allege that Truist breached that obligation.  The Amended Complaint alleges that, after the February 2021 correspondence, "Truist applied to the SBA for a guaranty on the proposed loan to Plaintiff," Amended Complaint, ¶¶ 9, 22, and later resolved one hold code, *id.*, ¶ 35. Moreover, Truist had also previously assisted Plaintiff with applying under the correct entity's name—after Plaintiff mistakenly applied under the wrong entity's name—and by reviewing the materials that Plaintiff submitted to flag other inconsistencies, like those that it raised in the February 17th letter.  *See* D.E. 46-2 (flagging issue that "the ADP Report & W-2 shows total wages of $192,994 and Medicare Wages of $192,729, however on your report it shows her wages at $107,994 with $7,994 over 100,000").

Plaintiff fails to plausibly allege that such actions constituted a breach of the purported contract that it has belatedly sought to identify.  For example, "Plaintiff does not sufficiently allege that [the alleged contract] create[s] a contractual obligation specifying the level of review that Defendant was required to give Plaintiff's loan . . . application," *Chance v. Wells Fargo Bank, N.A.*, No. 3:12-cv-320-JRS, 2012 WL 4461495, at *4 (E.D. Va. Sept. 25, 2012), or specify what additional "certain and definite" services Truist was required to perform to satisfactorily process the loan application, *see Devil's Advoc., LLC v. Zurich Am. Ins. Co.*, No. 1:13-cv-1246, 2014 WL 5161197, at *5 (E.D. Va. Oct. 10, 2014).  Without more, Plaintiff's breach of contract claim fails because—as Plaintiff stated in its opposition to Truist's original motion to dismiss—

in the "typical" case, "each bank has enormous discretion to do whatever it wants with the application; sit on it, bungle it, or deny it, usually without the borrower having any recourse." D.E. 17 at 8.  Plaintiff's own allegations show that Truist has done much more than that here.

### 3.     Plaintiff fails to allege it was harmed by any breach.

In its Order dismissing Plaintiff's original complaint, this Court held that Plaintiff's "Complaint fails to allege facts raising a facial plausibility that its loan was denied *because of* Truist's inaction."  Order at 5.  This was because there were many other factors (including the review of the SBA) that would determine whether Plaintiff's application would be accepted.

Plaintiff's Amended Complaint similarly suffers from a failure to adequately allege that any harm that it did suffer was caused by Truist.  In particular, "Ironworks fails to specify what the requirements of eligibility were or why Ironworks met them."  R&R at 17.  Additionally, Plaintiff fails to plausibly allege the SBA would have approved its application.  *Id.* at 15.  As Magistrate Judge Hoppe noted, "the SBA Procedural Notice . . . states that once a lender resolves a hold code through the lender certification process, the application 'will be automatically submitted into the next stage of processing,' not that the application would automatically be approved."  *Id.* at 16 (quoting *SBA Procedural Notice No. 5000-20092*, Small Business Administration (Feb. 10, 2021), *available at* https://www.sba.gov/sites/default/files/2021-02/Procedural%20Notice%205000-20092%20-%20Revised%20PPP%20Procedures%20to%20Address%20Hold%20Codes-508.pdf).  Thus, the SBA could have imposed additional hold codes or otherwise decided not to approve the loan.  *Id.* at 15.  In short, "[t]he Amended Complaint does not allege facts indicating that (1) Ironworks met all eligibility requirements, (2) no subsequent holds would have been placed on Ironworks's application, (3) no other issues

would have hindered Ironworks's application during the remainder of the process, and (4) funding remained for PPP loans." *Id.* at 15–16.

Plaintiff's failure to plausibly allege that its application would have been accepted but for Truist's actions dooms its motion to add this claim, like it undermined its original complaint. *See* Order at 6 ("As the unanswered questions above demonstrate, the Complaint does not foreclose the possibility that Ironworks' loan was rejected because of the conduct of the SBA, or Ironworks itself; or simply because funds were more limited than applicants.").

In sum, Plaintiff's attempt to add a breach of contract claim would be futile for the reasons identified by Magistrate Judge Hoppe, as well as the alternative reasons identified above.

## II.    **Magistrate Judge Hoppe properly concluded that Plaintiff has no separate claim for a breach of the covenant of good faith and fair dealing.**

As Magistrate Judge Hoppe concluded, Plaintiff's claim for a breach of a covenant of good faith and fair dealing must fail because, for the reasons provided above, Plaintiff has failed to allege a valid contract.  R&R at 12–13; *see Eplus Tech., Inc. v. Nat'l R.R. Passenger Corp.*, 407 F. Supp. 2d 758, 762 (E.D. Va. 2005) ("Where, as here, there is no allegation of a valid contract between the parties, there can be no breach of a duty that can only exist pursuant to a contract.").  Plaintiff does not object to this conclusion.

## III.   **Magistrate Judge Hoppe properly concluded that Plaintiff's proposed fraud claim is futile.**

"Under Virginia law, a plaintiff seeking to recover for fraud must allege: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 476–77 (4th Cir. 2006).  Additionally, "a plaintiff must plead 'the time, place, and contents of the false representations, as well as the identity of the

person making the misrepresentation and what he obtained thereby.'" *Edmonson*, 922 F.3d at 553.[3]

This Court dismissed Plaintiff's original fraud claim because "Ironworks' Complaint fails to allege facts raising a facial plausibility that its loan was denied *because of* Truist's inaction," *i.e.*, that Truist's allegedly false representations resulted in any damage to Plaintiff.  Order at 5. Magistrate Judge Hoppe concluded that this same fatal flaw would make the addition of Plaintiff's new fraud claim futile.  R&R at 17.  Amendment to add this claim would additionally be futile because Plaintiff fails to plead that Truist representatives made any false statements or that such statements were made with knowledge of their falsity.

### A. Magistrate Judge Hoppe properly concluded that Plaintiff fails to allege that any damages resulted from the alleged misrepresentations.

Magistrate Judge Hoppe concluded Plaintiff failed to state a fraud claim because Plaintiff "has not plausibly alleged damages flowing from Truist's alleged fraud."  R&R at 17.  Plaintiff failed to state a claim, Magistrate Judge Hoppe concluded, "because the success of Ironworks's application depended on several contingencies that are not sufficiently alleged."  *Id.*

For example, while Plaintiff conclusorily alleged it had complied with the SBA's eligibility requirements, *see, e.g.*, Amended Complaint ¶¶ 23 ("Plaintiff met the SBA requirements"), 41 ("[T]he only thing preventing the granting of the loan was Truist's refusal to clear the hold by clicking the onscreen prompt."), Plaintiff failed to "offer any factual support for these conclusory allegations," R&R at 14.  Without factual support, Plaintiff fails to nudge its

---

[3]     Plaintiff is not pursuing a constructive fraud theory.  Truist explained why Plaintiff's Amended Complaint failed to state a constructive fraud theory in briefing before Magistrate Judge Hoppe, Magistrate Judge Hoppe agreed with Truist's argument, *see* R&R at 18, and Plaintiff has not objected to that portion of the R&R.

"claims across the line from conceivable to plausible." *Centra Health*, 548 F.Supp.3d at 574 (citation omitted).

As noted above, Plaintiff does argue that its PPP 2.0 loan application would have been approved because (1) it was approved for a PPP 1.0 loan, and (2) it received the SBA letter stating that the failure to resolve the second hold code was a "PPP lender error." But—as explained in more detail above—neither of arguments plausibly alleges that Plaintiff complied with the SBA's remaining eligibility requirements. Qualification for a PPP 1.0 loan did not guarantee that an applicant would receive a PPP 2.0 loan. 86 Fed. Reg. at 3713 (PPP 2.0 loan eligibility requirements were narrower than PPP 1.0 loan eligibility requirements); *accord Stanford Tukwila Hotel*, 2022 WL 279321, at *3. And the SBA's letter to Plaintiff did not speak to Plaintiff's broader satisfaction of the eligibility requirements.

Likewise, Magistrate Judge Hoppe ruled that Plaintiff "has not plausibly alleged that Truist's alleged fraud caused its damages" because the approval of Plaintiff's application ultimately lay with the SBA. R&R at 16. As the Magistrate Judge noted, *id.*, even if Truist had cleared the hold identified by Plaintiff, a notice quoted by Plaintiff provides that the SBA still would need to process the loan further before it was granted. In particular, the notice states that "[u]pon submission of the Lender certification, and provided that there are no outstanding Hold Code(s) or Compliance Check Error Message(s) that require SBA resolution, the platform will automatically move the loan guaranty application *to the next stage of loan processing*." SBA Procedural Notice 5000-20092 at 4 (emphasis added); *see* R&R at 16.

In other words, lender submission to the SBA did *not* result in the SBA granting the loan. This is demonstrated by Plaintiff's own allegations here. Plaintiff alleges that, after Truist appropriately submitted the application the first time, the SBA raised a hold code. Amended

Complaint, ¶ 9 ("Truist applied to the SBA for a guaranty on the proposed loan to Plaintiff"). But Plaintiff alleges that, after Truist submitted a certification resolving the first hold code, the SBA went on to issue a second hold code. *Id.*, ¶ 35 (alleging that it was only "*after* the first hold code was successfully resolved" that "the second hold code appeared"). Even according to Plaintiff's allegations then, applications were not simply rubberstamped by the SBA after submission by Truist. These allegations demonstrate that the ultimate decision making over whether to approve the guaranty application lay with the SBA, not Truist, thereby breaking the causal chain. *See Stanford Tukwila Hotel Corp.*, 2022 WL 279321, at *6 ("Plaintiff knew or certainly should have known that the ultimate and singular right of approval for PPP loans was in the hands of the SBA so it had no right to rely on any alleged assurances or guarantees that the SBA would approve Plaintiff's application.").

In light of this attenuation, Magistrate Judge Hoppe concluded that Plaintiff's conclusory allegations that "Plaintiff would have received the second PPP loan" had Truist resolved the second hold code are implausible. Amended Complaint, ¶ 39; *see* R&R at 17 ("[B]ecause the success of Ironworks's application depended on several contingencies that are not sufficiently alleged, Ironworks's allegations fail to plausibly establish that it was left worse off because of Truist's alleged fraud."); *accord Glaser*, 464 F.3d at 479 (affirming dismissal of fraud claim under Virginia law when "plaintiffs' own admissions establish that any decline they experienced is unrelated to the defendants' alleged misrepresentations"); *Katyle*, 637 F.3d at 472 ("[I]f the connection is attenuated . . . a fraud claim will not lie. That is because the loss causation requirement—as with the foreseeability limitation in tort—is intended to fix a legal limit on a person's responsibility, even for wrongful acts." (citation omitted)).

Plaintiff argues that Magistrate Judge Hoppe held him to too rigorous of a standard, and that his claim should survive because it complies with Federal Rule of Civil Procedure 8's "short and plain statement" standard.  Objections at 13, 19, and 20.  However, it is black letter law that fraud claims must also comply with Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements.  The Fourth Circuit has been clear that to comply with Rule 9(b) "a plaintiff must plead 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"  *Edmonson*, 922 F.3d at 553 (citation omitted).  Magistrate Judge Hoppe properly applied this standard.

Plaintiff's failure to acknowledge the Rule 9(b) standard is reflected both in its Objections to the Recommendation & Report and in its proposed Amended Complaint more broadly, as discussed more below.  Specifically with respect to the Objections, Plaintiff states that "Ironworks does not address whether Truist 'obtained any benefit' from the misrepresentations as benefit is not a required element."  Objections at 9.  But, as noted above, Rule 9(b) requires Plaintiff to allege what the individual who made the misrepresentations "obtained thereby."  *Edmonson*, 922 F.3d at 553.  Magistrate Judge Hoppe noted this exact same failing of the proposed Amended Complaint in his Report and Recommendation.  *See* R&R at 17–18 ("Because Truist allegedly could have maintained Ironworks's business and made money off Ironworks's application had it taken simple steps to resolve the Hold, it is simply not plausible that Truist would forgo that option and instead lie repeatedly to Ironworks for the purpose of maintaining its business.").  It remains entirely unclear why Truist would forego fees for successful loans (which they could allegedly have earned "in almost no time at all," Amended Complaint, ¶ 11) and instead (according to Plaintiff's allegations) chose to lie to their customers.  The absence of a coherent rationale for this scheme undermines the plausibility of

Plaintiff's allegations, and makes the alternatives—*i.e,*, that the loan either was tied up in the SBA's bureaucracy or that Truist representatives were simply wrong about the status of the loan—more plausible.  Plaintiff's failure to satisfy (or even acknowledge) Rule 9(b) after a second bite at the apple should lead this Court to deny his motion to amend that claim as futile.

**B.      The fraud claim is also futile because Plaintiff fails to allege the representations at issue were false or made with knowledge of falsity.**

Plaintiff's failure to allege causation is fatal to its claim, but Plaintiff also fails to satisfy other elements that are necessary to its fraud claim, namely that the representations at issue were false or that the individuals making the statement knew they were false.

**1.      Only three statements approach the particularity Rule 9(b) requires.**

While Plaintiff makes broad claims of fraud throughout its Complaint, there are only three alleged statements that are accompanied with specificity close to that required by Rule 9(b).  First, Plaintiff alleges that on March 11, 2021 a Truist underwriter told Plaintiff that Plaintiff's loan application "is currently with the SBA for approval.  We will keep you updated once we receive a decision back form the SBA."  Amended Complaint, ¶ 13.  Plaintiff next alleges that on March 22, 2021, the same Truist representative told Plaintiff that "we are still waiting on the SBA Decision.  The SBA hasn't provided any update at this time.  Hopefully, they will have a decision soon as the deadline is March 31st."  *Id.*, ¶ 14.  Third, and finally, Plaintiff alleges that on March 29, 2021, "Truist representative Matthew Guthrie falsely told Plaintiff that the application was being held up by the SBA, rather than by Truist."  *Id.*, ¶ 15.

**2.      Plaintiff fails to plausibly allege these statements were false.**

However, Plaintiff's fraud claim fails because Plaintiff has failed to *plausibly* allege that these three statements were false.  Plaintiff's primary factual basis for arguing that these statements were false comes from its allegations that—as a categorical matter—"Lenders do not

21

submit any documents to the SBA," Amended Complaint, ¶ 13, and "the SBA does not resolve

holds," *id.*, ¶ 15.  *See also id.*, ¶ 14.  These allegations misconstrue the relevant federal

regulation and are contradicted by Plaintiff's own allegations.

Plaintiff's statement that "Lenders do not submit any documents to the SBA" is a partial

quotation of SBA Procedural Notice 5000-20092, which provides:

> Upon submission of the Lender certification, and provided that there are no outstanding Hold Code(s) or Compliance Check Error Message(s) that require SBA resolution, the platform will automatically move the loan guaranty application to the next stage of loan processing.  **Lenders do not submit any documents to SBA at this time.**

*Id.* (emphasis in original).  Based on a selective quotation of this last sentence, Plaintiff argues

that the Truist representatives' statement that the loan application was "currently with the SBA

for approval" must be false because "Lenders do not submit any documents to the SBA,"

Amended Complaint, ¶ 13, and "Truist had not submitted anything to the SBA," *id.*

But Plaintiff's conclusion does not follow from the regulation it quotes.  While Plaintiff

is correct that the lender does not submit *the supporting documentation* at the time it submits a

certification resolving a hold code, the regulation is clear that the lender does submit *the

certification* based on that documentation to the SBA.  SBA Procedural Notice 5000-20092 at 3.

Once that certification is submitted, the SBA moves the loan guaranty application to the next

stage of the SBA's loan processing system.  *Id.*  The notice cited by Plaintiff then provides no

basis to conclude that Truist representatives said anything false by stating the application "is

currently with the SBA for approval."  Amended Complaint, ¶ 13.

Additionally, Plaintiff's allegation that "Truist had not submitted anything to the SBA,

the SBA was not making any decision, and Truist was not waiting on any such decision," *id.*, is

expressly contradicted by Plaintiff's other factual allegations, which show that Truist *did* submit

an application to the SBA for approval.  *See id.*, ¶ 9 ("Truist applied to the SBA for a guaranty on the proposed loan to Plaintiff").

Plaintiff has failed to plausibly allege the statements underlying its claim were false.

### 3.    Plaintiff fails to plausibly allege that the Truist representatives knew their statements were false.

Plaintiff relatedly fails to plausibly allege that the Truist representatives knew their statements were false.  Again, Plaintiff's primary obstacle is its own allegations.  Plaintiff alleges that Truist knew that it "could resolve the hold code with the touch of an onscreen button" "if not from the very beginning, *at the very least from April 8, 2021*."  Amended Complaint, ¶ 36 (emphasis added).  But April 8, 2021, the first date at which Plaintiff is willing to allege that Truist had knowledge, *was significantly after each of the allegedly fraudulent statements were made*.  This allegation by itself concedes that Truist did not have the knowledge requisite to make a fraudulent statement.

Moreover, as alleged by Plaintiff, the status of the loan application shifted multiple times, with Truist submitting the loan application, Amended Complaint, ¶ 9; the SBA issuing a first hold code, *id.*, ¶ 35; Truist resolving this hold code through submission of a certification to the SBA, *id.*; and the SBA issuing a second hold code, *id.*  Plaintiff's failure to allege when these happenings occurred undermines the plausibility of its allegations that the Truist representatives knowingly made false statements about the status of the application.  At times, Truist was waiting on the SBA to act on the application.  At others, Plaintiff alleges the ball may have been in Truist's court to follow up on the hold codes issued by the SBA.  But without more specificity from Plaintiff, there is no plausible basis to assume that the Truist representatives' statements were false "*when made*," *Lissmann v. Hartford Fire Ins. Co.*, 848 F.2d 50, 53 (4th Cir. 1988) (emphasis in original), or that the representatives knew that they were false.  As alleged, it is at

least equally possible that the loan was with the SBA or that the representatives simply were mistaken about the status of loan.

In sum, Plaintiff's attempt to add a fraud claim would be futile for the reasons identified by Magistrate Judge Hoppe, as well as the alternative reasons identified above.

**IV.**   **If Plaintiff's Amended Complaint proceeds in any form, its damages claims should be trimmed.**

Finally, if the Court allows Plaintiff to amend with respect to any claim, it should dismiss Plaintiff's claims for damages under Virginia Code § 18.2-500 and for punitive damages.

**A.**   **Plaintiff has not alleged entitlement to damages under Va. Code § 18.2-500.**

Plaintiff's *ad damnum* seeks costs, interest, and fees under Virginia Code § 18.2-500, which provides for damages for violations of Virginia's civil conspiracy statute.  Virginia's civil conspiracy statute, in turn, provides that "[a]ny two or more persons who combine, associate, agree, mutually undertake or concert together" to harm another willfully or maliciously are guilty of a misdemeanor.  Virginia Code § 18.2-499.  These provisions are inapplicable to this case, as Plaintiff's complaint contains no allegation that Truist combined or agreed with anyone else to harm Plaintiff, and it is black letter law that Truist and its employees cannot conspire together. *See Leitner v. Liberty Univ., Inc.*, No. 6:19-cv-00029, 2020 WL 7128972, at *13 (W.D. Va. Dec. 4, 2020).  The Court should strike Plaintiff's claim for damages under Va. Code § 18.2-500.

**B.**   **Plaintiff has failed to plausibly allege entitlement to punitive damages.**

In fraud cases, Virginia law requires "an element of wantonness, or malice, or overreaching going beyond mere 'shadiness' in commercial dealings" before punitive damages are appropriate.  *Sit–Set, A.G. v. Universal Jet Exch., Inc.*, 747 F.2d 921, 928 (4th Cir. 1984).  Plaintiff has not alleged that Truist acted with malice or any similarly culpable state of mind.  The Court should strike Plaintiff's claim for punitive damages in its entirety.  *See Bennett v. 3M*

24

*Co.*, No. 3:14-cv-198, 2014 WL 1493188, at *3 (E.D. Va. Apr. 15, 2014) (dismissing punitive

damages claim when, as here, "Plaintiff does not even allege actual malice in his Complaint").

## CONCLUSION

WHEREFORE, Defendant Truist Bank respectfully requests the Court overrule

Plaintiff's objections to Magistrate Judge Hoppe's Report and Recommendation, adopt

Magistrate Judge Hoppe's Report and Recommendation, deny Plaintiff's motion to amend the

complaint, and dismiss this matter with prejudice.

Date: August 29, 2022                              Respectfully submitted,

                                                   /s/ Matthew D. Fender
                                                   Matthew D. Fender (VSB No. 76717)
                                                   MCGUIREWOODS LLP
                                                   Gateway Plaza
                                                   800 East Canal Street
                                                   Richmond, VA  23219
                                                   Telephone: (804) 775-1076
                                                   Facsimile: (804) 698-2209
                                                   mfender@mcguirewoods.com

                                                   Cheryl L. Haas (admitted *pro hac vice*)
                                                   MCGUIREWOODS LLP
                                                   Promenade
                                                   1230 Peachtree Street, NE
                                                   Suite 2100
                                                   Atlanta, GA 30309-3534
                                                   Telephone: (404) 443-5726
                                                   Facsimile: (404) 443-5777
                                                   chaas@mcguirewoods.com

Joshua D. Wade (VSB No. 92588)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA  23219
Telephone: (804) 775-4388
Facsimile: (804) 698-2048
jwade@mcguirewoods.com

*Attorneys for Defendant Truist Bank*

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2022, a copy of the foregoing Defendant Truist Bank's

Response to Ironworks Development LLC's Objections to Magistrate Judge Hoppe's Report and

Recommendation was electronically filed via the Court's CM/ECF system and served

electronically pursuant to Western District of Virginia General Rule 7(g) on:

Jonathan S. Jacobs
ZŌBLAW
1900 Arlington Blvd., Ste. B
Charlottesville, VA 22903

*Counsel for Plaintiff Ironworks Development LLC*

/s/ Matthew D. Fender
Matthew D. Fender (VSB No. 76717)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA  23219
Telephone: (804) 775-1076
Facsimile: (804) 698-2209
mfender@mcguirewoods.com

*Attorney for Defendant Truist Bank*