IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| IRONWORKS DEVELOPMENT LLC,<br><br>         *Plaintiff*,<br><br>v.<br><br>TRUIST BANK,<br><br>         *Defendant*. | CASE NO. 3:21-CV-00032<br><br><u>MEMORANDUM OPINION</u><br><br>JUDGE NORMAN K. MOON |

  Plaintiff Ironworks Development LLC ("Plaintiff") has filed objections to United States Magistrate Judge Joel C. Hoppe's Report and Recommendation ("R&R"). The R&R, Dkt. 49 ("R&R"), addresses Plaintiff's motion to amend/correct its complaint, Dkt. 42. This motion arose after Defendant Truist Bank ("Defendant") moved to dismiss Plaintiff's original complaint in this action on September 1, 2021. Dkt. 7. The Court granted this motion on December 7, 2021, dismissing the original complaint in its entirety and granting Plaintiff's "leave to move to amend" its complaint within fourteen days. *Ironworks Dev., LLC v. Truist Bank*, No. 3:21-cv-32, 2021 WL 5830013, at *3 (W.D. Va. Dec. 7, 2021), Dkt. 28. On December 21, 2021, Plaintiff filed the instant motion to amend and attached its proposed amended complaint (the "Amended Complaint") thereto. Dkt. 42. Defendant opposes the motion. Dkt. 46.

  After undertaking review of the R&R and objections, *see* 28 U.S.C. § 636(b)(1)(B); *Farmer v. McBride*, 177 F. App'x 327, 330 (4th Cir. 2006), this Court will reject the R&R and grant Plaintiff's motion to amend/correct its complaint with regards to its breach of contract claim. The Court will accept the R&R and deny Plaintiff's motion to amend/correct its complaint with regards to its fraud claim.

## I. Standard of Review

Objections to a magistrate judge's report and recommendation under Federal Rule of Civil Procedure 72(b) "train[] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." *United States v. Midgette*, 478 F.3d 616, 621 (4th Cir. 2007) (citing *Thomas v. Arn*, 474 U.S. 140, 147–48 (1985)). The district court must determine *de novo* any portion of the magistrate judge's report and recommendation to which a proper objection has been made. Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C).

When a party seeks the court's leave to amend its pleading, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Fourth Circuit has held "that leave to amend a pleading should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or [when] the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (internal quotation marks and citation omitted) (emphasis in original).

Amendment is futile when the proposed amended complaint fails to state a claim upon which relief can be granted. *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008); *Donaldson v. U.S. Dep't of Labor*, 930 F.2d 339, 349–50 (4th Cir. 1991). To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). A court need not "accept the legal

conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotations omitted). Under Federal Rule of Civil Procedure 9(b), there is a heightened pleading standard for fraud claims. Under this standard, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Unless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations, . . . conjecture about the merits of the litigation should not enter into the decision whether to allow amendment." *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) (internal citation omitted).

## II.  Background

The allegations of the Amended Complaint center around Defendant's failure to properly process Plaintiff's application for a second-round loan pursuant to the Federal Government's Paycheck Protection Program ("PPP"). *See generally* Dkt. 41 ("Amend. Compl."). The well-pleaded factual allegations in the Amended Complaint and summarized in this section are accepted as true and all reasonable inferences drawn from those facts are presented in the light most favorable to Plaintiff. *Cf. United States ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (citing Fed. R. Civ. P. 12(b)(6)).

The PPP was a program whereby the Federal Government, through the Small Business Administration ("SBA"), offered lenders guarantees on certain loans offered to small businesses to provide relief from the COVID-19 pandemic. Amend. Compl. ¶¶ 1, 6. The SBA would eventually forgive those loans if certain requirements were met. *Id.* ¶ 6. PPP loans were offered in two separate rounds and qualifying borrowers could obtain one loan in each round. *Id.* ¶¶ 1–2, 6.

Loans were issued on a "first come, first served" basis due to limited PPP funding. Def.'s Br. In Opp'n Ex. B, Letter from Truist Bank to Applicant (Feb. 17, 2021) (executed by Arthur Watson III on Feb. 22, 2021), Dkt. 46-2 ("Letter") at 2; Amend. Compl. ¶¶ 3–5, 22, 26 (citing the same).

Plaintiff, the borrower, worked closely with Defendant, the lender, to secure a PPP loan during the first round. *Id.* ¶ 1. Later, the Federal Government announced another round of PPP loans, and on January 26, 2021, Plaintiff sent its application to Defendant for a second-round PPP loan. *Id.* ¶ 2. However, Defendant "rejected" that application, and on February 17, 2021, sent Plaintiff a letter (the "Letter") through its PPP client portal. *Id.* ¶ 3; *see also* Letter at 2–3. The Letter stated that Defendant was "unable to process" Plaintiff's application in the amount requested, as it could not verify certain payroll information, though it also stated that Defendant "would still like to work with [Plaintiff]" and offered Plaintiff two options. Amend. Compl. ¶ 3; *see also* Letter at 2. Under the first option, Plaintiff could agree to seek a loan in the amount of $976,896.24—an amount "substantially lower" than the amount Plaintiff requested initially. Amend. Compl. ¶ 4. If Plaintiff agreed to a loan of that amount, Defendant would "process [Plaintiff's] PPP loan in the above amount with the SBA. *Id.*; *see* Letter at 2. Under the second option, Plaintiff could move forward with the application in the higher amount, but Plaintiff would be required to gather and submit additional information about its employee compensation. *See* Letter at 2. The Letter also warned that "the funding for the Paycheck Protection Program is limited and being processed by the SBA on a 'first-come, first-served' basis" and urged Plaintiff to "provide any required documentation and information to [Defendant] as quickly as possible." *Id.*

Plaintiff accepted the first option, "compl[ying]" with the offer terms and submitting the "signed and 'executed' [L]etter" to Defendant, therein agreeing to the lower amount. Amend. Compl. ¶ 5; *see* Letter 2–3. After Defendant received Plaintiff's acceptance of this offer, Defendant

"applied to the SBA for a guaranty on the proposed loan to Plaintiff" on February 23, 2021. Amend. Compl. ¶ 9.

Due to the Parties' agreement, Plaintiff could not seek a PPP loan from any other lender. *Id.* ¶ 5. This is because the SBA automatically rejected all guaranty applications submitted on behalf of a borrower who already had another application pending, unless that pending application was "either pushed through to approval by the lender or withdrawn by the lender." *Id.* ¶ 8 (emphasis omitted). Soon after Defendant submitted the Plaintiff's PPP application to the SBA, one or more holds (collectively, the "Hold") were placed on Plaintiff's application. *Id.* ¶ 10. On February 25, 2021, Defendant "first stated that there was a hold code." *Id.* ¶ 37. "[T]he first hold code was successfully resolved" some time before "the second appeared." *Id.* ¶ 35. Plaintiff alleges that Defendant's intentional failure to resolve the second hold code prior to the March 31, 2021 application deadline prevented it from receiving second-round PPP money. *See generally id.* ¶¶ 11-17, 20, 35.

The SBA had a "largely automated" role in the PPP process, and "[i]f the automated system blocked an application, generally it was up to the lender to resolve it." *Id.* ¶ 7. Still, lenders received guidance from the SBA regarding resolving such issues, as the SBA's automated system would "report to the lender any problems with the borrower, [and] explain to the lender how to resolve any reported problems." *Id.* Further, the SBA delegated the authority to remove holds to lenders via a "Lender certification process." *Id.* ¶ 15; *see, e.g., id.* ¶ 35.

In this case, the SBA confirmed to Plaintiff that its automated systems (the same that reported to Defendant) reported after the first hold code was successfully resolved. *Id.* The SBA also confirmed to Plaintiff that after the second appeared "the lender needed to check and select 'Submit Lender Certification.'" *Id.* This was not done, and the loan was not approved. *Id.* Rather

than resolve the Hold by clicking an onscreen prompt to execute the lender certification, *see id.* ¶¶ 16, 20, 35, Defendant "repeatedly made misleading and false statements to Plaintiff about the PPP loan status." *Id.* ¶ 11.

Plaintiff alleges several examples of Defendant making misleading and false statements to Plaintiff about the PPP loan status prior to the March 31, 2021 application deadline. First, Plaintiff alleges that on March 11, 2021, an underwriter for Defendant indicated to Plaintiff, via Defendant's online portal, that Plaintiff's application was "currently with the SBA for approval" and that Defendant would "keep Plaintiff updated once [it] received a decision" from the SBA. *Id.* ¶ 13. Second, this underwriter, on March 26, 2021, after Plaintiff asked if Defendant had heard from the SBA or knew what was holding up Plaintiff's application, falsely represented to Plaintiff that the SBA had not provided an update and Defendant was waiting on the SBA to make a decision. *Id.* ¶ 14. Third, on March 29, 2021, another of Defendant's representatives "falsely told Plaintiff that the application was being held up by the SBA, rather than by [Defendant]." *Id.* ¶ 15. Yet, Plaintiff alleges that, "[i]n truth, [Defendant] had not submitted anything to the SBA, the SBA was not making any decision and [Defendant] was not waiting on any such decision. *Id.* ¶ 13; *see also id.* ¶ 15.

Plaintiff alleges that Defendant, through the aforementioned representations, misled it into believing that the SBA was holding up the application process, when Plaintiff's application was actually being held up by Defendant's failure to remove the hold. *See id.* ¶¶ 12–16. Plaintiff argues that Defendant made these representations to deter Plaintiff from seeking another lender. *See id.* ¶¶ 26, 40–41. Plaintiff alleges that Defendant's misrepresentations led it to believe that if it withdrew its application with Defendant, it would be in the back of the PPP loan application queue, therein having almost no chance of obtaining a loan. *See id.* ¶¶ 12, 31, 36.

On July 2, 2021, Plaintiff received an email from Defendant's PPP Portal stating that its second round PPP loan had been denied "because the verification and approval of [its] PPP loan application was not completed before the [March 31, 2021] deadline." *Id.* ¶ 17; *accord id.* ¶ 35. Plaintiff alleges that "[r]esolving the Hold was simple and could have been done in almost no time at all," and "had the Hold been resolved, nothing else would have prevented Plaintiff from receiving its second round of PPP money." *Id.* ¶ 11.

Plaintiff's Amended Complaint asserts three claims: breach of contract (Count 1), breach of the covenant of good faith and fair dealing (Count 2), and fraud (Count 3). *Id.* ¶¶ 21–42.

To support its breach of contract claim, Plaintiff alleges that the Letter constitutes an offer, which it accepted, therein forming an enforceable contract under which "Defendant was bound to comply with its promise" to "process [Plaintiff's] PPP loan in the [agreed upon] amount with the SBA." *Id.* ¶ 22. Plaintiff alleges that the reason it never received the loan "had nothing to do with its failure to meet any requirements or eligibility, or anything to do with the SBA" as "[a]ll those things were in order." *Id.* ¶ 23. Rather, Plaintiff never received the second-round loan because "Defendant failed to 'process' Plaintiff's application as it promised, by failing to resolve the Hold." *Id.*; *see* Letter at 2. Plaintiff alleges that it was damaged by the breach because the breach caused Plaintiff not to receive "nearly $1 million in PPP money that would have been forgiven." Amend. Compl. ¶ 24; *see also id.* ¶¶ 1, 6.

In its second claim, Plaintiff argues that Defendant breached the implied covenant of good faith and fair dealing by "fail[ing] to attend Plaintiff's loan, either by resolving the Hold or at least withdrawing the SBA application to free Plaintiff to apply elsewhere," *id.* ¶ 27, therein preventing Plaintiff from receiving the loan through Defendant or one of its competitors. *Id.* ¶ 28.

In its third claim, Plaintiff argues that Defendant committed fraud by falsely representing

that it was waiting on the SBA to resolve the Hold, while knowing that resolving the Hold was its obligation. *Id.* ¶ 30; *see also id.* ¶¶ 32–33. Plaintiff claims that Defendant intentionally made these misrepresentations to convince Plaintiff that it was working to process the loan so that Plaintiff would not withdraw its application with Defendant and seek another lender. *Id.* ¶¶ 31–36, 41. Plaintiff claims it was damaged by that reliance because it was "unable to receive a PPP loan in the amount of $984,277.30." *Id.* ¶ 39. Plaintiff also alleges that if Defendant had clicked the onscreen prompt to remove the Hold, it would have received the loan, as "the second PPP loans were granted 'under the same terms, conditions, and processes as' the first PPP loan, which Plaintiff had received with no issues." *Id.* (quoting *Business Loan Program Temporary Changes; Paycheck Protection Program Second Draw Loans*, Small Business Administration, 86 Fed. Reg. 3712, 3712–13 (Jan. 14, 2021), *available at* 2021 WL 121384). Further, Plaintiff alleges that "had [Defendant] not lied to Plaintiff, it would have received its PPP money from another lender." *Id.* Finally, Plaintiff alleges that Defendant "benefited from these practices and false and misleading statements by preventing borrowers like Plaintiff from going to competitors," and Defendant "made money off each loan that it successfully processed." *Id.* ¶ 40.

### III.  Objections

Plaintiff, in objecting to the R&R, argues that "the Recommendation is based solely on the grounds that [Plaintiff] did not sufficiently allege consideration of a contract and fraud damages," and Plaintiff "did in fact provide specific factual basis for those claims, which factual basis the Magistrate only partially disputed and addressed." Dkt. 50 ("Objections") at 2. Having fully considered the facts alleged in the pleadings and arguments raised by the parties, the Court rejects the R&R for reasons stated in the Report and as further addressed below.

### A. Consideration

The R&R concluded that amending the complaint would be futile because Plaintiff "has not plausibly alleged any consideration in support of its contract with [Defendant]." R&R at 8. Plaintiff objected, arguing that (1) the letter from the SBA, which Plaintiff asserts provides "exactly the factual basis the Court requested," shows that consideration was not illusory, and (2) the R&R fails to address Defendant's detriment. Objections at 2.

To establish an enforceable contract under Virginia law, a Plaintiff must show that there was consideration. *Smith v. Mountjoy*, 694 S.E.2d 598, 602 (Va. 2010); *Adt v. Nationstar Mortgage LLC*, No. 3:17-cv-162, 2018 WL 1569078, at *7 (E.D. Va. Mar. 30, 2018). Under Virginia law, "[c]onsideration is, in effect, the price bargained for and paid for a promise. It may be in the form of a benefit to the party promising or a detriment to the party to whom the promise is made." *Smith*, 694 S.E.2d at 602 (internal citations and quotation marks omitted). And a "very slight advantage to the one party or a trifling inconvenience to the other is generally held sufficient to support the promise." *Adt*, 2018 WL 1569078, at *8 (quoting *Walker v. Arrington*, 403 S.E.2d 693, 695 (Va. 1991) (internal citation omitted)); *see also JTH Tax, Inc. v. Aime*, 744 F. App'x 787, 791 (4th Cir. 2018) ("'Virginia has long followed the 'peppercorn' theory of consideration,' under which even the most picayune promise may be enough to make an agreement binding.") (quoting *Sfreddo v. Sfreddo*, 720 S.E.2d 145, 153 (Va. Ct. App. 2012)).

### i. The Court Rejects the R&R's Conclusion on Illusory Consideration

The R&R noted that Plaintiff agreed to a lower loan amount and received the benefit "that its application could be processed more quickly . . ." R&R at 11. The R&R concluded that the "alleged

-9-

benefit to [Defendant]," that is, submitting earlier in a time-sensitive process and foregoing the need to wait for and review additional financial documentation, "is illusory," *id.* at 10, offering not even "a trifling inconvenience" to Defendant, *id.* at 9. Plaintiff objects to this conclusion, viewing the letter from the SBA as alleging the necessary facts to find that consideration is not illusory, Objections at 2.

Plaintiff raises several arguments to support its objection. As Plaintiff alleges, Defendant required Plaintiff to agree to the contract "within **3 calendar days**," and explained the importance of moving quickly because "the funding for the [PPP] Program is limited to and being processed by the SBA on a first-come, first-served basis . . ." *Id.* at 3 (citing Letter) (internal quotations omitted) (emphasis in original). Thus, Plaintiff argues that Defendant "both recognized and received the benefit of submitting the application to the SBA more quickly." *Id.* at 3–4. Further, Plaintiff argues that Defendant benefited just as Plaintiff did by "getting in line sooner for a limited-time benefit," *id.* at 4, as Defendant "made money off each loan that it successfully processed." *Id.* (internal citations omitted).

Plaintiff also argues that Defendant "benefited from [Plaintiff's] agreement to forego the additional money because it removed the corresponding obligation to '[s]ubmit a revised Borrower Worksheet and/or supporting documentation' in support of those funds which [Defendant] no longer had to review and could instead move forward immediately." *Id.* (quoting Letter). In addition, Plaintiff argues that Defendant "incurred a detriment under the contract." *Id.* Defendant agreed to process the PPP loan with the SBA, *see* Amend. Compl. ¶ 4, therein going beyond agreeing to "simply consider offering a loan." Objections at 4.

Plaintiff asserts that the R&R "addressed [Plaintiff] and [Defendant]'s benefit of submitting the application to the SBA early but did not address [1] [Defendant]'s benefit of not having to

review additional documentation, [2] the detriment undertaken by [Plaintiff], or [3] the detriment undertaken by [Defendant] to shepherd the application through the SBA process." *Id.* at 5 (internal footnotes omitted). The benefit of not having to review additional documentation, per Plaintiff, "may be reasonably inferred from the facts," though "not explicitly allege[d] . . . in the Amended Complaint itself." *Id.* at 5 n.2 (citing R&R at 2 n.1) (internal references omitted). Regarding the detriment undertaken by Plaintiff, Plaintiff notes that, while the R&R states that Plaintiff "did not dispute [Defendant]'s assertion that [Plaintiff] suffered no detriment," this is incorrect. *Id.* at 5 n.3 (citing R&R at 10, n.4).

Moreover, Plaintiff argues that the R&R wrongly concluded that the Amended Complaint "demonstrate[s] that [Plaintiff] maintained the ability to withdraw this alleged benefit [to Defendant]—its application—at any time." *Id.* at 5 (quoting R&R at 11). Plaintiff argues that "[t]he fact that [Plaintiff] *could* direct [Defendant] to withdraw its loan application and go elsewhere with its business is irrelevant," because "[i]t is basic that a retained client or customer is far more likely to stay and do business than a non-client." *Id.* (emphasis in original). Plaintiff argues that "[t]he money had an expiration date, it was expected to run out, and it did run out" so "[o]nce [Plaintiff] signed with [Defendant] it was effectively stuck as going with another bank would mean going to the back of the SBA line and risking that the funds would run out before its application was processed." *Id.* at 6. Plaintiff contends that consideration does not require "that the potential benefit was guaranteed," so it does not affect consideration if "the customer could walk." *Id.*

The R&R cites case law indicating that an arrangement in which one side can withdraw at any time lacks the existence of "bargained for consideration" sufficient to support an enforceable obligation. R&R at 11 (citing *RLM Commc'ns Inc. v. Tuschen*, 66 F. Supp. 3d 681, 692

-11-

(E.D.N.C. 2014) (discussing that under North Carolina law "[c]onsideration which may be withdrawn on a whim is illusory consideration which is insufficient to support a contract" (internal citation omitted)). While the R&R fails to cite Virginia-specific law regarding this matter, this Court has previously recognized similar principles. Indeed, this Court has recognized that "[u]nder Virginia law, 'if it appears that one party was never bound on its part to do the acts which form the consideration for the promise of the other, there is a lack of mutuality of obligation and the other party is not bound.'" *Cauvel v. Schwan's Home Service, Inc.*, No. 6:10-cv-00012, 2011 WL 573378, at *7 (quoting *Busman v. Beeren & Barry Invs., LLC*, 69 Va. Cir. 375, 378 (Va. Cir. Ct. 2005)). Further, this Court has recognized that "[m]utuality of obligation exists when each party has exchanged promises in which each must be bound to act or refrain from acting," *id.* (citing *C.G. Blake Co. v. W.R. Smith & Son, Ltd.*, 133 S.E. 685, 688 (1926)), and "[t]he doctrine of mutuality of obligation is 'one aspect of the rule that mutual promises constitute considerations for each other.'" *Id.* (quoting *Turner v. Hall*, 104 S.E. 861, 863 (1920)). "The modern trend is to call a lack of mutuality of obligation a 'lack of consideration because of the illusory or optional nature' of the promise." *Id.* (quoting *Wexford Bancorp, L.L.C. v. Concept 1, L.L.C.*, 66 Va. Cir. 72, 73 (Va. Cir. Ct. 2004)).

However, Plaintiff contends that Defendant's false statements led Plaintiff "to believe that *requesting* Defendant withdraw the [guarantee] application and tak[e] its business elsewhere" would leave Plaintiff "worse off than it was before," Objections at 6–7 (citing Amend. Compl. ¶ 12) (emphasis in original), so Plaintiff "was tricked into believing [withdrawing the application] was not a viable option," *id.* at 7 (citing Amend. Compl. ¶ 12). Viewing the allegations in the light most favorable to Plaintiff, the Court recognizes the factual allegations as "enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, therein meeting the low

pleading standard required at this stage of litigation. Thus, the Court rejects the R&R's conclusion that the Amended Complaint alleges only illusory consideration.

### ii. Plaintiff Alleges That Defendant Received a Benefit

Plaintiff also disagrees with the R&R's conclusion that there was no consideration because "although the SBA issued PPP loans on a first come, first served basis, merely because an application is submitted earlier does not automatically make it more likely to be approved," R&R at 11–12, so, "while [Plaintiff] alleged 'that it had satisfied all of the eligibility requirements,' because [Plaintiff] does not offer any factual support for these conclusions' it 'cannot reasonably be inferred' that lowering the loan amount would result in [Defendant] enjoy[ing] the benefit of an increased likelihood that it would profit from [Plaintiff]'s loan." Objections at 7 (quoting R&R at 12). The Court finds that Plaintiff has alleged enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

At a minimum, Plaintiff has alleged that, through the SBA Letter, the Defendant gave it two options, and the Plaintiff accepted its second option, therein accepting Defendant's offer to "***process [Plaintiff]'s PPP loan in the above amount with the SBA.***" Compl. ¶ 3–5 (emphasis in original). After accepting the second option, Defendant "applied to the SBA for a guaranty on the proposed loan to Plaintiff." *Id.* ¶ 9. Defendant would thus have an opportunity to receive funds for processing PPP loans.[1] Because Plaintiff alleges facts supporting offer, acceptance, and bargained-for exchange constituting a benefit to both parties, the Plaintiff has alleged facts sufficient to show

---

[1] The Court takes judicial notice of federal regulations dictating that the "SBA will pay lenders fees for processing PPP loans," with the payments distributed as follows: "[f]ive (5) percent for loans of not more than $350,000;" "[t]hree (3) percent for loans of more than $350,000 and less than $2,000,000;" and "[o]ne (1) percent for loans of at least $2,000,000." 85 Fed. Reg. 20811, 20816 (Apr. 15, 2020).

an enforceable contract between the parties. Thus, the Court rejects the R&R's conclusion that the Amended Complaint fails to allege that Defendant received a benefit.

### iii. Plaintiff Fails to Allege That Either Party Incurred a Detriment

Finally, Plaintiff argues that the R&R failed to address that consideration existed based on detriments that both parties incurred. *See* Objections at 2, 5, 20. Again, the Court finds that Plaintiff has alleged enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Plaintiff argues that Defendant incurred a detriment because it stated it would "process [Plaintiff's] PPP Loan . . . with the SBA." Letter at 2; Objections at 4. Plaintiff also argues that it incurred a detriment, which therein created consideration sufficient to establish an enforceable contract.[2] Plaintiff argues that it suffers a detriment because (1) it agreed to the lower loan amount, and (2) Plaintiff could not apply for second-round PPP loans with any other lenders after having submitted its loan application through Defendant. *Id.*

For the foregoing reasons, the Court rejects the R&R's conclusion that Plaintiff failed to plausibly allege existence of consideration to support an enforceable contract. The Court will grant Plaintiff's motion to file an Amended Complaint as related to its breach of contract claim.

### B. Fraud Damages

The R&R correctly concluded that Plaintiff's proposed fraud claim is futile. R&R at 18. However, Plaintiff objects to this conclusion, arguing that Plaintiff "did in fact provide factual

---

[2] This argument was not presented to Judge Hoppe prior to the R&R and was made only in a footnote in Plaintiff's objections to the R&R. Objections at 5 n.3

basis" for fraud damages, which "the Magistrate only partially disputed and addressed." Objections at 2.

"Under Virginia law, a plaintiff seeking to recover for fraud must allege: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 476–77 (4th Cir. 2006). Further, "a plaintiff must plead 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 553 (4th Cir. 2019) (citing Fed. R. Civ. P. 9(b)).

While Plaintiff argues that its claim should survive because it complies with Federal Rule of Civil Procedure 8's "short and plain statement" standard, Objections at 8 n.5, 19, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard for fraud claims. Under this standard, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[T]he 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1297 (2d ed. 1990)); *see also Murphy v. Capella Educ. Co.*, 589 F. App'x 646, 652 (4th Cir. 2014) (internal reference omitted).

Plaintiff fails to allege what Defendant, who allegedly made the misrepresentation, 'obtained thereby.' As such, Plaintiff fails to meet the Rule 9(b) heightened pleading standard. Plaintiff makes this failure clear, even asserting in its objections to the R&R that "[Plaintiff] does not address whether [Defendant] 'obtained any benefit' from the misrepresentations," based on the

false conclusion that "benefit is not a required element" of the claim. Objections at 9; *see also* R&R at 17–18 (addressing this same failing of the proposed Amended Complaint). As Plaintiff never alleges facts regarding why Defendant would forego fees for successful loans and choose to lie to their customers, Plaintiff's Amended Complaint fails to satisfy the Rule 9(b) standard.

Plaintiff further fails to meet the Rule 9(b) pleading standard due to failing to plausibly allege with particularity that the representations at issue were false or made with knowledge of falsity—much less that the representations at issue *caused* Plaintiff never to receive second-round PPP loans. Plaintiff alleges, in addition to broad claims of fraud that do not meet Rule 9(b)'s particularity requirements, that (1) an underwriter for Defendant told Plaintiff on March 11, 2021 that Plaintiff's loan application "is currently with the SBA for approval," and Defendant "will keep you updated once we receive a decision back from the SBA," Amend. Compl. ¶ 13, (2) on March 22, 2021, the same underwriter told Plaintiff that Defendant was "still waiting on the SBA Decision. The SBA hasn't provided any update at this time. Hopefully, they will have a decision soon as the deadline is March 31st," *id.* ¶ 14, and (3) on March 29, 2021, a different representative for Defendant "falsely told Plaintiff that the application was being held up by the SBA, rather than by [Defendant]," *id.* ¶ 15.

There are no facts indicating either that (1) these representations led to Plaintiff's damages, or (2) if Defendant had cleared the Hold that Plaintiff identified then the SBA would have necessarily granted the loan. Without a chain of causation from the misrepresentations to the damages, the Plaintiff fails to allege facts necessary for a fraud claim. *See Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 472 (4th Cir. 2011) ("[I]f the connection is attenuated . . . a fraud claim will not lie. That is because the loss causation requirement . . . is intended to fix a legal limit on a person's responsibility, even for wrongful acts.") (quoting *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161,

174 (2d Cir. 2005) (internal quotation marks and citations omitted)); *see also Glaser*, 464 F.3d at 479 (affirming fraud claim dismissal under Virginia law in part because "plaintiffs' own admissions establish that any [damages] they experienced [are] unrelated to the defendants' alleged misrepresentations.").

Plaintiff primarily argues that the above statements were false based on the assertions that "[l]enders do not submit any documents to the SBA," Amend. Compl. ¶ 13, and "the SBA does not resolve [] holds, but rather delegated that authority to lenders such as [Defendant] through the Lender certification process," *id.* ¶ 15. However, the first statement—that "[l]enders do not submit any documents to the SBA," *id.* ¶ 13, is a partial quotation from SBA Procedural Notice 5000-20092, which, taken in full, indicates that, though the lender does not submit the supporting documentation when submitting a certification resolving a hold code, the lender does submit the certification based on that documentation to the SBA. SBA Procedural Notice 5000-20092 at 3. After that certification is submitted, the SBA moves the loan guaranty application to the next stage of SBA's loan processing system, *id.*, and thus the notice Plaintiff cites does not provide a basis to reasonably conclude that Defendants falsely spoke when stating the application "is currently with the SBA for approval." Amend. Compl. ¶ 13.

Plaintiff also alleges, in support of its claim that Defendant made false misrepresentations, that Defendant "had not submitted anything to the SBA, the SBA was not making any decision, and [Defendant] was not waiting on any such decision," *id.*, which Plaintiff's other factual allegations contradict. For example, Plaintiff alleges that Defendant "applied to the SBA for a guaranty on the proposed loan to Plaintiff." *Id.* ¶ 9.

Thus, the R&R correctly concluded that "[Plaintiff's] proposed fraud claim is futile" for failure to allege damages to Plaintiff or any benefit to Defendant stemming from the alleged

misrepresentations. R&R at 18 (footnote omitted). As the R&R acknowledges, there is no need to address Defendant's arguments regarding Plaintiff's "entitlement to punitive damages and damages under Virginia Code § 18.2-500," since the underlying proposed claims are futile. R&R at 18 n.5. Further, though Plaintiff raises objections to the R&R's conclusion, arguing that (1) the R&R was incorrect in concluding that there is no support for claims that Plaintiff would have received a second-round PPP loan, (2) new holds might have arisen, (3) the SBA might have run out of money, (4) removing the hold was not the last step, (5) the R&R was incorrect in concluding Plaintiff failed to allege that its loan would have been forgiven, and (6) Plaintiff would have received the second-round PPP loan if Defendant clicked the onscreen prompt to clear the hold, Objections at 9–15, 17–19, none of these objections save the fraud claim.

As concluded in the R&R, the fraud claim in the Amended Complaint is futile for failing to (1) meet the Rule 9(b) standard and (2) plausibly allege with particularity that the representations at issue were false or made with knowledge of falsity. As such, the Court will accept the R&R as to the fraud claim and deny Plaintiff's motion to amend the complaint as to the fraud claim.

### C. Breach of the Covenant of Good Faith and Fair Dealing

The R&R concluded that Plaintiff's claim for a breach of a covenant of good faith and fair dealing must fail. R&R at 12–13. Plaintiff has not objected to this conclusion. Thus, the Court does not consider this claim further.

## IV. Conclusion

In sum, Plaintiff has raised objections that demonstrate Plaintiff's Amended Complaint states a non-futile claim for relief regarding its breach of contract claim. Accordingly, the Court

will reject Judge Hoppe's R&R, Dkt. 49, as to this claim. The Court accepts Judge Hoppe's R&R as to the fraud claim. Therefore, Plaintiff's motion to amend the complaint, Dkt. 42, will be granted as to the breach of contract claim but not the fraud claim.

The Clerk of the Court is directed to send a certified copy of this memorandum opinion and accompanying Order to all counsel of record and to Judge Hoppe.

Entered this  30th  day of September, 2022.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE