IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| IRONWORKS DEVELOPMENT LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>TRUIST BANK,<br><br>*Defendant*. | CASE NO. 3:21-CV-00032<br><br><u>MEMORANDUM OPINION</u><br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on Defendant's motion to dismiss the Amended Complaint. Dkt. 54. The Court granted Plaintiff's motion to amend/correct the complaint as to its breach of contract claim and denied the motion as to the fraud claim. Dkt. 53. The only remaining claim in the Amended Complaint is Plaintiff's breach of contract claim. Defendant now argues Plaintiff lacks standing and fails to meet the pleading requirements for this claim.

## I. Background

The allegations of the Amended Complaint center around Defendant's failure to properly process Plaintiff's application for a second-round loan pursuant to the Federal Government's Paycheck Protection Program ("PPP"). *See generally* Dkt. 41 ("Amend. Compl."). The well-pleaded factual allegations in the Amended Complaint and summarized in this section are accepted as true and all reasonable inferences drawn from those facts are presented in the light most favorable to Plaintiff. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016) (reiterating the appropriate standard of review).

The PPP was a program whereby the Federal Government, through the Small Business

Administration ("SBA"), offered lenders guarantees on certain loans offered to small businesses to provide relief from the COVID-19 pandemic. Amend. Compl. ¶¶ 1, 6. The SBA would eventually forgive those loans if certain requirements were met. *Id.* ¶ 6. PPP loans were offered in two separate rounds and qualifying borrowers could obtain one loan in each round. *Id.* ¶¶ 1–2, 6. Loans were issued on a "first come, first served" basis due to limited PPP funding. Def.'s Br. In Opp'n Ex. B, Letter from Truist Bank to Applicant (Feb. 17, 2021) (executed by Arthur Watson III on Feb. 22, 2021), Dkt. 46-2 ("Letter") at 2; Amend. Compl. ¶¶ 3–5, 22, 26 (citing the same).

Plaintiff, the borrower, worked closely with Defendant, the lender, to secure a PPP loan during the first round. *Id.* ¶ 1. Later, the Federal Government announced another round of PPP loans, and on January 26, 2021, Plaintiff sent its application to Defendant for a second-round PPP loan. *Id.* ¶ 2. However, Defendant "rejected" that application, and on February 17, 2021, sent Plaintiff a letter (the "Letter") through its PPP client portal. *Id.* ¶ 3; *see also* Letter at 2–3. The Letter stated that Defendant was "unable to process" Plaintiff's application in the amount requested, as it could not verify certain payroll information, though it also stated that Defendant "would still like to work with [Plaintiff]" and offered Plaintiff two options. Amend. Compl. ¶ 3; *see also* Letter at 2. Under the first option, Plaintiff could agree to seek a loan in the amount of $976,896.24—an amount "substantially lower" than the amount Plaintiff requested initially. Amend. Compl. ¶ 4. If Plaintiff agreed to a loan of that amount, Defendant would "process [Plaintiff's] PPP loan in the above amount with the SBA. *Id.*; *see* Letter at 2. Under the second option, Plaintiff could move forward with the application in the higher amount, but Plaintiff would be required to gather and submit additional information about its employee compensation. *See* Letter at 2. The Letter also warned that "the funding for the Paycheck Protection Program is limited and being processed by the SBA on a 'first-come, first-served' basis" and urged Plaintiff to

"provide any required documentation and information to [Defendant] as quickly as possible." *Id.*

Plaintiff accepted the first option, "compl[ying]" with the offer terms and submitting the "signed and 'executed' [L]etter" to Defendant, therein agreeing to the lower amount. Amend. Compl. ¶ 5; *see* Letter 2–3. After Defendant received Plaintiff's acceptance of this offer, Defendant "applied to the SBA for a guaranty on the proposed loan to Plaintiff" on February 23, 2021. Amend. Compl. ¶ 9.

Due to the Parties' agreement, Plaintiff could not seek a PPP loan from any other lender. *Id.* ¶ 5. This is because the SBA automatically rejected all guaranty applications submitted on behalf of a borrower who already had another application pending, unless that pending application was "either pushed through to approval by the lender or withdrawn by the lender." *Id.* ¶ 8 (emphasis omitted). Soon after Defendant submitted the Plaintiff's PPP application to the SBA, one or more holds (collectively, the "Hold") were placed on Plaintiff's application. *Id.* ¶ 10. On February 25, 2021, Defendant "first stated that there was a hold code." *Id.* ¶ 37. "[T]he first hold code was successfully resolved" some time before "the second appeared." *Id.* ¶ 35. Plaintiff alleges that Defendant's intentional failure to resolve the second hold code prior to the March 31, 2021 application deadline prevented it from receiving second-round PPP money. *See generally id.* ¶¶ 11-17, 20, 35.

The SBA had a "largely automated" role in the PPP process, and "[i]f the automated system blocked an application, generally it was up to the lender to resolve it." *Id.* ¶ 7. Still, lenders received guidance from the SBA regarding resolving such issues, as the SBA's automated system would "report to the lender any problems with the borrower, [and] explain to the lender how to resolve any reported problems." *Id.* Further, the SBA delegated the authority to remove holds to lenders via a "Lender certification process." *Id.* ¶ 15; *see, e.g., id.* ¶ 35.

3

In this case, the SBA confirmed to Plaintiff that its automated systems (the same that reported to Defendant) reported after the first hold code was successfully resolved. *Id.* The SBA also confirmed to Plaintiff that after the second appeared "the lender needed to check and select 'Submit Lender Certification.'" *Id.* This was not done, and the loan was not approved. *Id.* Rather than resolve the Hold by clicking an onscreen prompt to execute the lender certification, *see id.* ¶¶ 16, 20, 35, Defendant "repeatedly made misleading and false statements to Plaintiff about the PPP loan status." *Id.* ¶ 11.

Plaintiff alleges several examples of Defendant making misleading and false statements to Plaintiff about the PPP loan status prior to the March 31, 2021 application deadline. First, Plaintiff alleges that on March 11, 2021, an underwriter for Defendant told Plaintiff, via Defendant's online portal, that Plaintiff's application was "currently with the SBA for approval" and that Defendant would "keep Plaintiff updated once [it] received a decision" from the SBA. *Id.* ¶ 13. Second, this underwriter, on March 26, 2021, after Plaintiff asked if Defendant had heard from the SBA or knew what was holding up Plaintiff's application, falsely represented to Plaintiff that the SBA had not provided an update and Defendant was waiting on the SBA to make a decision. *Id.* ¶ 14. Third, on March 29, 2021, another of Defendant's representatives "falsely told Plaintiff that the application was being held up by the SBA, rather than by [Defendant]." *Id.* ¶ 15. Yet, Plaintiff alleges that, "[i]n truth, [Defendant] had not submitted anything to the SBA, the SBA was not making any decision and [Defendant] was not waiting on any such decision. *Id.* ¶ 13; *see also id.* ¶ 15.

Plaintiff alleges that Defendant, through the aforementioned representations, misled it into believing that the SBA was holding up the application process, when Plaintiff's application was actually being held up by Defendant's failure to remove the hold. *See id.* ¶¶ 12–16. Plaintiff argues

4

that Defendant made these representations to deter Plaintiff from seeking another lender. *See id.* ¶¶ 26, 40–41. Plaintiff alleges that Defendant's misrepresentations led it to believe that if it withdrew its application with Defendant, it would be in the back of the PPP loan application queue, therein having almost no chance of obtaining a loan. *See id.* ¶¶ 12, 31, 36.

On July 2, 2021, Plaintiff received an email from Defendant's PPP Portal stating that its second round PPP loan had been denied "because the verification and approval of [its] PPP loan application was not completed before the [March 31, 2021] deadline." *Id.* ¶ 17; *accord id.* ¶ 35. Plaintiff alleges that "[r]esolving the Hold was simple and could have been done in almost no time at all," and "had the Hold been resolved, nothing else would have prevented Plaintiff from receiving its second round of PPP money." *Id.* ¶ 11.

To support its breach of contract claim, Plaintiff alleges that the Letter constitutes an offer, which it accepted, therein forming an enforceable contract under which "Defendant was bound to comply with its promise" to "process [Plaintiff's] PPP loan in the [agreed upon] amount with the SBA." *Id.* ¶ 22. Plaintiff alleges that the reason it never received the loan "had nothing to do with its failure to meet any requirements or eligibility, or anything to do with the SBA" as "[a]ll those things were in order." *Id.* ¶ 23. Rather, Plaintiff never received the second-round loan because "Defendant failed to 'process' Plaintiff's application as it promised, by failing to resolve the Hold." *Id.*; *see* Letter at 2. Plaintiff alleges that it was damaged by the breach because the breach caused Plaintiff not to receive "nearly $1 million in PPP money that would have been forgiven." Amend. Compl. ¶ 24; *see also id.* ¶¶ 1, 6.

## II. Legal Standard

When a party attacks the subject matter jurisdiction of the Court under Rule 12(b)(1) of the

Federal Rules of Civil Procedure, the court generally must first determine that it has jurisdiction as a threshold matter. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431–32 (2007) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998)). Where, as here, a defendant challenges the sufficiency of a plaintiff's allegations to establish subject matter jurisdiction, the court must accept the truth of the plaintiff's allegations at this stage, but still, it is the plaintiff's burden to establish that the allegations are sufficient to support subject matter jurisdiction. *See, e.g.*, *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

Second, to survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The purpose of a Rule 12(b)(6) motion is to "test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King*, 825 F.3d at 214 (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999)). "Thus, when considering a motion to dismiss, a court must consider the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Bing v. Brivo Systems, LLC*, 959 F.3d 605, 616 (4th Cir. 2020). Nevertheless, only facts can render a claim for relief plausible. "[F]ormulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor is it sufficient for a plaintiff to plead facts merely consistent with liability. The plaintiff must plead enough factual content to nudge a claim across the border from mere possibility to plausibility. *Id.* at 570. *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

## III. Analysis

### A. Standing

Under Virginia law, "an action on a contract must be brought in the name of the party in whom the legal interest is vested." *Cottrell v. Gen. Sys. Software Corp.*, 248 Va. 401, 403 (1994) (quoting *Cemetery Consultants, Inc. v. Tidewater Funeral Directors Ass'n, Inc.*, 219 Va. 1001, 1003 (1979)). Defendant argues that the alleged contract at issue was between it and Castle Hill, Plaintiff's parent corporation, which has a distinct Taxpayer Identification Number. Dkt. 54 at 6. Thus, Plaintiff Ironworks cannot sue upon it. *Id.* at 6–8. Defendant claims that "Plaintiff Ironworks has not suffered an injury-in-fact because Ironworks was 'not a party' to the only contract that has been alleged and so has not suffered 'an invasion of a legally protected interest.'" *Id.* at 8 (citing *Capitol Prop. Mgmt. Corp. v. Nationwide Prop. & Cas. Ins. Co.*, 261 F. Supp. 3d 680, 687 (E.D. Va. 2017) (citing *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir. 2000)), *aff'd*, 757 F. App'x 229 (4th Cir. 2018).

Per Defendant, Plaintiff Ironworks applied for and received a PPP 1.0 loan on April 16, 2020, but it was Castle Hill that submitted an initial application for PPP 2.0 funding. *Id.* (citing *id.* (Ex. B)). Defendant asserts: "As the PPP 1.0 application had been made by Ironworks, *see* **Exhibit A**—and not Castle Hill—Castle Hill thus could not seek a PPP 2.0 loan. The SBA identified this issue, and Plaintiff Ironworks then submitted a PPP 2.0 loan application on March 5, 2021. **Exhibit D**." *Id.* (emphasis in original). Defendant thus argues "[t]his series of events demonstrates that any alleged agreement would have been between Truist and Castle Hill—*not* Ironworks," because the letter agreement concerned the only application Truist was working on between February 17 and 22, 2021. *Id.* (emphasis in original). And, Defendant asserts, this was Castle Hill's application, since Ironworks did not submit its PPP 2.0 application until March 5, 2021. *Id.* The letter agreement was addressed only to "Applicant." *See* Letter.

But Defendant has previously conceded that the contract was between Plaintiff and

7

Defendant. In its Opposition to Plaintiff's Motion to Amend, Defendant first referenced the letter agreement as "a letter dated February 17, 2021, which Truist wrote to Plaintiff and which Plaintiff signed and returned to Truist on February 22, 2021." Dkt. 46 at 5. Defendant repeatedly referred to Plaintiff as the letter's addressee. *Id.* at 6. Defendant characterized the letter as "an agreement that Truist would adjust the amount of the propose loan in Plaintiff's application." *Id.* at 8. Defendant quoted the letter as stating that it would "process [Plaintiff's] PPP loan in the [defined] amount with the SBA." *Id.* (alterations in original) (internal reference omitted). And Defendant characterized the letter agreement similarly in its Response to Plaintiff's Objections to the Report and Recommendations. Dkt. 51 at 4 (describing it as "a February 17, 2021 letter, which Truist wrote to Plaintiff and which Plaintiff signed and returned to Truist"); *id.* at 5 ("In its letter, Truist informed Plaintiff that after reviewing Plaintiff's documents Truist . . . .").

The letter can plausibly be read as addressed to Plaintiff, and Defendant conceded in earlier filings that it read the letter as such. As the letter is addressed only to "Applicant," at the motion to dismiss stage the breach of contract claim will not be dismissed for lack of standing.

### B. Breach of Contract Claim

This Court has already established that Plaintiff's breach of contract claim meets the *Twombly*, 550 U.S. at 555, pleading standard to survive a 12(b)(6) motion. Dkt. 52. The Court reiterates points it made previously in rejecting Magistrate Judge Hoppe's Report and Recommendation ("R&R") as related to the breach of contract claim. *Id.*

To establish an enforceable contract under Virginia law, a Plaintiff must show that there was consideration. *Smith v. Mountjoy*, 694 S.E.2d 598, 602 (Va. 2010); *Adt v. Nationstar Mortgage LLC*, No. 3:17-cv-162, 2018 WL 1569078, at *7 (E.D. Va. Mar. 30, 2018). Under Virginia law,

"[c]onsideration is, in effect, the price bargained for and paid for a promise. It may be in the form of a benefit to the party promising or a detriment to the party to whom the promise is made." *Smith*, 694 S.E.2d at 602 (internal citations and quotation marks omitted). And a "very slight advantage to the one party or a trifling inconvenience to the other is generally held sufficient to support the promise." *Adt*, 2018 WL 1569078, at *8 (quoting *Walker v. Arrington*, 403 S.E.2d 693, 695 (Va. 1991) (internal citation omitted)); *see also JTH Tax, Inc. v. Aime*, 744 F. App'x 787, 791 (4th Cir. 2018) ("'Virginia has long followed the 'peppercorn' theory of consideration,' under which even the most picayune promise may be enough to make an agreement binding.") (quoting *Sfreddo v. Sfreddo*, 720 S.E.2d 145, 153 (Va. Ct. App. 2012)).

At a minimum, Plaintiff has alleged that, through the SBA Letter, the Defendant gave it two options, and the Plaintiff accepted its second option, therein accepting Defendant's offer to "***process [Plaintiff]'s PPP loan in the above amount with the SBA.***" Amend. Compl. ¶ 3–5 (emphasis in original). After accepting the second option, Defendant "applied to the SBA for a guaranty on the proposed loan to Plaintiff." *Id.* ¶ 9. Defendant would thus have an opportunity to receive funds for processing PPP loans.[1] Because Plaintiff alleges facts supporting offer, acceptance, and bargained-for exchange constituting a benefit to both parties, the Plaintiff has alleged facts sufficient to show an enforceable contract between the parties.

Plaintiff alleges enough facts to show that Defendant incurred a detriment because it stated it would "process [Plaintiff's] PPP Loan . . . with the SBA." Letter at 2. Plaintiff alleges facts sufficient to show it suffered a detriment because (1) it agreed to the lower loan amount, and (2)

---

[1] The Court takes judicial notice of federal regulations dictating that the "SBA will pay lenders fees for processing PPP loans," with the payments distributed as follows: "[f]ive (5) percent for loans of not more than $350,000;" "[t]hree (3) percent for loans of more than $350,000 and less than $2,000,000;" and "[o]ne (1) percent for loans of at least $2,000,000." 85 Fed. Reg. 20811, 20816 (Apr. 15, 2020).

9

Plaintiff could not apply for second-round PPP loans with any other lenders after having submitted its loan application through Defendant.

For the foregoing reasons, the Court previously rejected the R&R's conclusion that Plaintiff failed to plausibly allege existence of consideration to support an enforceable contract. Dkt. 52 at 14. The Court granted Plaintiff's motion to file an Amended Complaint as related to its breach of contract claim. *Id.* And the Court finds these reasons also support a denial of Defendant's motion to dismiss the breach of contract claim.

In addition, Defendant argues Plaintiff has failed to plausibly allege that Defendant breached its obligations or that any injury it suffered was caused by the alleged breach. But viewing the allegations in the light most favorable to Plaintiff, the Court finds that the factual allegations are "enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, therein meeting the low pleading standard required at this stage of litigation.

Plaintiff alleges that the reason it never received the loan "had nothing to do with its failure to meet any requirements or eligibility, or anything to do with the SBA" as "[a]ll those things were in order." Amend. Compl. ¶ 23. Rather, Plaintiff never received the second-round loan because "Defendant failed to 'process' Plaintiff's application as it promised, by failing to resolve the Hold." *Id.*; *see* Letter at 2. Plaintiff alleges that it was damaged by the breach because the breach caused Plaintiff not to receive "nearly $1 million in PPP money that would have been forgiven." Amend. Compl. ¶ 24; *see also id.* ¶¶ 1, 6.

Thus, the 12(b)(6) motion to dismiss will be denied.

### IV. Conclusion

Because Plaintiff has standing and has alleged enough facts to meet the *Twombly*, 550 U.S. at

555, pleading standard for a breach of contract claim, Defendant's motion to dismiss will be denied.

The Clerk of the Court is directed to send a certified copy of this memorandum opinion and accompanying Order to all counsel of record.

Entered this  9th   day of November, 2022.

*/s/ Norman K. Moon*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE